# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BY: PATRICK M. BLAIR (I.D. NO. 314670)<br>    MATTHEW D. DELEO (I.D. NO. 331082)<br>**TIMONEY KNOX LLP**<br>400 MARYLAND DRIVE<br>P.O. BOX 7544<br>FORT WASHINGTON, PA 19034<br>TELEPHONE (215) 646-6000<br>pblair@timoneyknox.com<br>mdeleo@timoneyknox.com<br><br>BY: LINDSEY M. COOK (I.D. NO. 323326)<br>    MATTHEW M. HENNESY (I.D. NO. 307020)<br>**BARLEY SNYDER, LLP**<br>126 EAST KING STREET<br>LANCASTER, PA 17602<br>TELEPHONE (717) 299-5201<br>lcook@barley.com<br>mhennesy@barley.com<br><br>Bizzell Corporation<br>            *Plaintiff*<br>    v.<br><br>Tripwire South, LLC, *et al*.<br>            *Defendants* | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>NO.  1:25-CV-00680-KMN |

**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) OF DEFENDANTS TRIPWIRE SOUTH, LLC, TRIPWIRE AVIATION LLC, AND RYAN MORRIS**

Defendants, Tripwire South, LLC, Tripwire Aviation, LLC, and Ryan Morris, by and through their attorneys, Timoney Knox, LLP and Barley Snyder, LLP, hereby

1

submit the instant Motion to Dismiss and moves this Honorable Court to dismiss Plaintiff's Complaint with Prejudice.

**I.     STATEMENT OF FACTS PURSUANT TO FED. R. CIV. P. 12(D)**

   **A.     Morris does not own Tripwire South and Tripwire Aviation**

   1.   Tripwire South is Florida limited liability company which was set up by several Managers in 2021.

   2.   However, management and controlling ownership of Tripwire South transferred to Skybolt Consulting Group, LLC ("Skybolt") in 2022. A true and correct copy of Tripwire South's Amended Annual Report is attached hereto as Exhibit "A."

   3.   Since 2022, Skybolt has been the controlling owner of Tripwire South and the signatory to all official filings. True and correct copies of the Annual Reports for Tripwire South for 2023, 2024, and 2025 are collectively attached hereto as Exhibit "B."

   4.   Tripwire Aviation is a member-managed Pennsylvania limited liability company, whose sole member is Michael Dickinson. A true and correct copy of the Initial Resolutions of Tripwire Aviation are attached hereto as Exhibit "C."

   **B.     The Contract**

   5.   Starting in April of 2024, Morris, on behalf of Tripwire South, and Michael Hrobuchak ("Hrobuchak"), on behalf of Bizzell Corporation ("Bizzell"),

2

negotiated a contract, through a series of Signal chats, for the purchase of military grade explosives, including Comp-B and Smokeless Powder (the "Contract").[1]

6. The Contract calls for an initial sale of 220,000 pounds of Comp-B, with an additional sale of 200,000 pounds of Comp-B, every month, for the next 48-60 months. A true and correct copy of the contractual terms for Comp-B are attached hereto as Exhibit "E."

7. The Contract calls for the sale of a) 226,716 pounds of pounds of M1 Smokeless Powder; b) 95,920 pounds of M6 Smokeless Powder; c) 25,950 pounds of M26 Smokeless Powder; d) 140,320 pounds of M30 Smokeless Powder; e) 55,000 pounds of Black Powder "Snake Charges" and "Spots;" and f) 20,000 pounds of Back Powder. A true and correct copy of the contract terms for the sale of Smokeless Powders is attached hereto as Exhibit "F."

C. **Tripwire South entered into separate contracts to procure Comp-B and Smokeless Powder for Bizzell**

8. At all times relevant hereto, Tripwire South entered into several separate contracts to purchase the military grade explosives contemplated by the Contract.

---

[1] The Complaint distinguishes between M6 powders and black powders. However, both M6 powders and black powder are forms of smokeless powder.

3

9. On or about May 21, 2024, Tripwire South entered into a contract with J Squad International, LLC ("J Squad") for the purchase of Smokeless Powder. A true and correct copy of the May 21, 2024 contract is attached hereto as Exhibit "G."

10. Tripwire South also entered into an agreement with Bear River Powder for the purchase of Smokeless Powder. A true and correct copy of a July 21, 2024 Invoice for the purchase of Smokeless Powder from Bear River Powder is attached hereto as Exhibit "H."

11. Further, Tripwire South entered into an agreement with Jacks Powder Keg for the purchase of Smokeless Powder. A true and correct copy of a May 7, 2024 Invoice for the purchase of Smokeless Powder from Jacks Powder Keg is attached hereto as Exhibit "I."

12. On or about May 13, 2024, Tripwire South entered into a separate agreement with J Squad International for the purchase of Comp-B. A true and correct copy of the executed May 13, 2024 Contract between Tripwire South and J Squad for the purchase of Comp-B is attached hereto as Exhibit "J."

13. Unfortunately, and for reasons unknown, Hrobuchak inserted himself into the contractual relationships between Tripwire South and its Comp-B supplier by contacting the military base where the Comp-B was being purchased.

14. As a result of Hrobuchak's actions, the agreement with J Squad for the sale of Comp-B was cancelled. A true and correct copy of the settlement agreement

between Tripwire South and J Squad, which returned Tripwire South's money for the purchase of Comp-B, is attached hereto as Exhibit "K."

15. In order to fulfill its obligations to Bizzell, Tripwire South then entered into an agreement to purchase Comp-B from Bonetti Explosives, once the Comp-B had been demilitarized by Acuity International and provided to Bonetti Explosives. A true and correct copy of Acuity International's letter regarding demilitarizing Comp-B and providing it to Bonetti Explosives is attached hereto as Exhibit "L."

16. On or about February 21, 2025, following Bonetti Explosives receipt of Comp-B, Tripwire South entered into a purchase order with Bonetti Explosives. A true and correct copy of the Purchase Order between Tripwire South and Bonetti Explosives is attached hereto as Exhibit "M."

17. Tripwire South continues to receive monthly installments of Comp-B from Bonetti Explosives, which were intended to fulfill Tripwire South's contractual obligations to Bizzell. True and correct copies of Bills of Landing for the Comp-B Tripwire South received from Bonetti Explosives are collectively attached hereto as Exhibit "N."

D. **Bizzell failed to pay for all the explosives contemplated by the Contract**

18. On May 15, 2024, Tripwire South invoiced Bizzell for the initial sale of 220,000 pounds of Comp-B. A true and correct copy of the May 15, 2024 Invoice is attached hereto as Exhibit "O."

4914-8701-9582, v. 1

19. On or about June 7, 2024, Bizzell made an initial down payment on the 220,000 pounds of Comp-B, purchasing 41,407 pounds of Comp-B for $910,554.00. A true and correct copy of a June 7, 2024 Invoice for the down payment is attached hereto as Exhibit "P."

20. On or about June 14, 2024, Tripwire South invoiced Bizzell for the remainder of the Comp-B pursuant to the terms of the Contract. A true and correct copy of the June 14, 2024 Invoice is attached hereto as Exhibit "Q."

21. On April 16, 2024 and June 7, 2024, Tripwire South invoiced Bizzell for all the Smokeless Powder contemplated by the Contract. True and correct copies of the April 16, 2024 and June 7, 2024 Invoices are collectively attached hereto as Exhibit "R."

22. Bizzell made initial downpayments on the Smokeless Powder on April 16, 2024 and June 11, 2024. True and correct copies of the April 16, 2024 and June 11, 2024 Invoices are collectively attached hereto as Exhibit "S."

23. Tripwire South then invoiced Bizzell for the remainder of the Smokeless Powder on June 11, 2024 pursuant to the terms of the Contract. A true and correct copy of June 11, 2024 Invoice for the remaining Smokeless Powder is attached hereto as Exhibit "T."

4914-8701-9582, v. 1

24. To date, Bizzell has failed and/or refused to make any further payments for the outstanding amounts of Comp-B and Smokeless Powder contemplated by the Contract.

### E. **Bizzell failed to obtain all proper licensing and permitting.**

25. Several months after contracting with Bizzell, Tripwire South discovered Bizzell could not legally receive or export Comp-B and Smokeless Powder.

26. On September 3, 2024, Tripwire South sent an email to Morris and Sovana Logistics ("Sovana"), the freight company retained by Bizzell to export the military grade explosives. A true and correct copy of the September 3, 2024 email is attached hereto and incorporated herein as Exhibit "U."

27. Bizzell was carbon copied on the email as well as two attorneys from Fluet Law - nrotsko@fluet.law and kdubois@fluet.law - Bizzell's counsel in this matter. See Exhibit "U."

28. The September 3, 2024 email states, "We need either the ATF license or the cover letter from a competent authority stating that this purchase and shipment is pursuant to a valid military contract in order for Tripwire to be covered releasing this." See Exhibit "U."

29. Further, on October 4, 2024, Sovana emailed Tripwire South, with carbon copies to Bizzell and now three attorneys from Fluet Law -

nrotsko@fluetlaw.com, kdubois@fluet.law, and amunitz@fluet.law - inquiring as follows: "Regarding the ATF information please advise exactly what is needed from Bizzell/ATF to move cargo? We are working on coordination to pick up and if the ATF information/approvals are required prior please advise what documents is needed." A true and correct copy of the October 4, 2024 email chain is attached hereto as Exhibit "V."

30. On the same date, October 4, 2024, Tripwire South emailed Sovana back, with carbon copies to Bizzell and Fluet Law, stating Bizzell "will need a FEL (Federal Explosive License)." See Exhibit "V."

31. On October 10, 2024, Sovana again emailed Tripwire South, with carbon copies to Bizzell and Fluet Law, stating "we are awaiting the FEL to be obtained." See Exhibit "V."

32. On the same date, October 10, 2024, Tripwire South emailed Sovana, with carbon copies to Bizzell and Fluet Law, stating, "Jamie, I need to know where the license is? This is now 3 months past what was agreed upon. If they don't have a license then I need the inspectors name they are getting the license inspection from. Also need to verify the commerce piece. This is military grade powder and we have a commerce license in place. That won't work. Is there a DDTC license for all the materials. Time is up. We are incurring tremendous costs to store and provide

security for the material they should have had out of here August 1." See Exhibit "V."

33. On October 14, 2024, Bizzell emailed Tripwire South, with carbon copies to Sovana and Fluet Law, stating, in pertinent part, "Regarding the FEL, the license that will be utilized would have already been transferred to Bizzell but for the recent hurricanes and the resulting outages." See Exhibit "V."

34. On February 3, 2025, and despite a promise the ATF license would be produced in short order, Sovana emailed Tripwire South, with carbon copies to Bizzell and Fluet Law, stating, "Please find attached Bizzell's ATF license." See Exhibit "V."

35. Bizzell's February 3, 2025 ATF license was provided nearly nine (9) months after the parties contracted for the sale of military grade explosives.

36. More importantly, the ATF license provided on February 3, 2025 was *a license to import*, not sell, explosives. A true and correct copy of the ATF license provided on February 3, 2025 is attached hereto as Exhibit "W."

37. To date, Bizzell has never provided an ATF license to Tripwire South which would allow Tripwire South to transfer military grade explosives to Bizzell.

F. **Tripwire South incurred a financial loss as a result of Bizzell's actions.**

38. Tripwire South incurred costs of $2,027,453.97 for the purchase of Smokeless Powder from J Squad. See Exhibit "G."

39. Tripwire South incurred costs of $98,875.00 for purchase of Smokeless Powder from Bear River. See Exhibit "H."

40. Tripwire South incurred costs of $352,329.00 for the purchase of Smokeless Powder from Jacks Powder Keg. See Exhibit "I."

41. Tripwire South incurred costs of $4,828,200.00 for the purchase of Comp-B from Bonetti Explosives. See Exhibit "M."

42. In addition to the costs described above, Tripwire South incurred significant and ongoing costs related to Bizzell's failure and/or refusal to obtain the proper licensing and permitting.

43. Tripwire South incurred costs of $76,945.97 to ship the military grade explosives. True and correct copies of the freight bills for the military grade explosives are collectively attached hereto as Exhibit "X."

44. Tripwire South incurred costs of $33,842.35 to purchase containers to store the military grade explosives. True and copies of the invoices for the purchase of containers are collectively attached hereto and incorporated herein as Exhibit "Y."

45. Tripwire South incurred costs of $121,678.35 for security personnel, first as independent contractors, and then as full-time employees, to protect Bizzell's military grade explosives. True and correct copy of Tripwire South's security personnel costs are collectively attached hereto as Exhibit "Z."

46. Tripwire South incurred the cost of purchasing a Tellehandler for $61,995.00, to move the high explosive material once it arrived at Tripwire South's facilities. A true and correct invoice for the Telehandler is attached hereto as Exhibit "AA."

47. Currently the Tellehandler has a resale value of $50,000.00, demonstrating a net loss of $11,995.00 for Tripwire South. A true and correct copy of a quote for the resale value of the Tellehandler is attached hereto as Exhibit "BB."

48. Tripwire South incurred a cost of $100,000.00 to retain a broker to find a new buyer for Bizzell's military grade explosives, once Bizzell failed to produce the proper licensing and permitting. A true and correct copy of the invoice from Tripwire South's broker is attached hereto as Exhibit "CC."

49. Tripwire South incurred a cost of $23,657.35 to rent a crane to move the military grade explosives for shipment once Tripwire South found a replacement buyer. A true and correct copy of Tripwire South's crane costs are attached hereto as Exhibit "DD."

50. Tripwire South incurred a cost of $200,500.00 to repackage the military grade explosives for shipment once a new buyer was identified. A true and correct copy of the invoice to repack the military grade explosives is attached hereto as Exhibit "EE."

4914-8701-9582, v. 1

51. Tripwire South also incurred costs for the storage of Bizzell's military grade explosives as well as administrative and personnel costs associated with all the items detailed above.

52. To date, Tripwire South's only ability to mitigate its damages has been limited to a sale of Smokeless Powder to Shooters World. A true and correct copy of the contract with Shooters World is attached hereto as Exhibit "FF".

53. However, Tripwire South's attempt to mitigate the harm caused by Bizzell has not remedied the full financial loss Tripwire South suffered as a result of Bizzell.

54. Unless and until Tripwire South is able to find a replacement buyer for the Comp-B it obtained to fulfill its contractual obligations to Bizzell, Tripwire South will continue to suffer a financial loss as a result of the actions of Bizzell.

55. Currently, Tripwire South's financial loss as a result of the actions and inactions of Bizzell is in excess of $477,683.99.

### G.    **Tripwire Aviation was funded by a loan from Tripwire South.**

56. Tripwire Aviation was started with a capital investment from Tripwire South in the form of a loan. A true and correct copy of the loan agreement between Tripwire Aviation and Tripwire South is attached hereto as Exhibit "GG."

4914-8701-9582, v. 1

**II.   THERE IS NO GENUINE DISPUTE AS TO ANY MATERIAL FACT RELATED TO THE CLAIMS AGAINST MORRIS AND MORRIS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

57.   Counts I and II of the Complaint allege claims for Fraud and Fraudulent Inducement, respectively, based on representations by Morris. <u>See</u>, Complaint Counts I-II.

58.   Under Pennsylvania law, fraud consist of "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. <u>Weissberger v. Myers</u>, 90 A.3d 730, 735 (Pa. Super. Ct. 2014)

59.   Fraud must be proven by clear and convincing evidence. <u>Id</u>. "Clear and convincing evidence is the highest burden in our civil law and requires that the fact-finder be able to come to clear conviction, without hesitancy, of the truth of the precise fact in issue." <u>Id</u>.

60.   "To establish a fraudulent inducement claim under Pennsylvania law, Plaintiff must prove the following elements: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the

13

resulting injury was proximately caused by the reliance." Harrison v. Cabot Oil & Gas Corp., 887 F. Supp. 2d 588, 592 (M.D. Pa. 2012).

61. The false misrepresentations alleged by Bizzell are a) Tripwire South could sell 41,000 pounds of Comp-B to Bizzell; b) Tripwire South could make the Comp-B available in 20 days; c) Tripwire South had Comp-B in its possession or control; d) Tripwire South had Safety Data Sheets for the Comp-B; e) Tripwire South could have the Comp-B flaked; and f) Tripwire South signed an agreement to have Comp-B flaked. See, Complaint ¶ 65.

62. Plaintiff is unable to establish by clear and convincing evidence the alleged representations were made falsely.

63. First, Tripwire South did in fact enter into an agreement to procure Comp-B for Bizzell on May 13, 2024. See Exhibit "I."

64. The actions of Hrobuchak caused Tripwire and J Squad to cancel this agreement.

65. In an attempt to continue to operate in good faith, Tripwire South subsequently entered into a second agreement to procure Comp-B for Bizzell. See Exhibit "M."

66. This second agreement remains in effect and Tripwire South continues to receive monthly installments of Comp-B from Bonetti Explosives, which were

intended to fulfill Tripwire South's contractual obligations to Bizzell. See Exhibit "N."

67. Second, it's Bizzell's own actions which prevented Tripwire South from delivering Comp-B and Smokeless Powder to Bizzell. See, e.g., Exhibits "U," "V," and "W."

68. Third, Tripwire South received Safety Data Sheets from J Squad for their Comp-B. A true and correct copy of the Safety Data Sheets for Comp-B are attached hereto as Exhibit "HH."

69. Fourth, Tripwire South's representation that it could flake Comp-B is not material to the transaction at hand, as Bizzell specifically requested that the first batch of Comp-B be provided as block, and not flaked. See a true and accurate copy of the Signal chats between Morris and Hrobuchak attached hereto as Exhibit "II." [2]

70. The remaining contractual claims of the Complaint, Counts III-VII, do not apply to Morris as Plaintiff admits it only contracted with Tripwire South in this matter. See, Complaint ¶ 5.

71. However, even if the contractual claims are directed to Morris, they fail to state a claim upon which relief can be granted.

---

[2] Tripwire South denies it lacks the ability to flake Comp-B, even if that representation was material to Contract.

72. "It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to the contract." Electron Energy Corp. v. Short, 597 A.2d 175, 177 (Pa. Super. Ct. 1990).

73. As there is no genuine dispute as to any material fact related to the claims against Morris, Morris is entitled to judgment as a matter of law.

### III. THERE IS NO GENUINE DISPUTE AS TO ANY MATERIAL FACT RELATED TO THE CLAIMS AGAINST TRIPWIRE AVIATION AND TRIPWIRE AVIATION IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

74. Tripwire Aviation does not appear by name in any of the Counts alleged by Plaintiff. See, Complaint Counts I-VII.

75. Further, Plaintiff admits the Contract was between Tripwire South and Bizzell. See, Complaint ¶ 5.

76. As Tripwire Aviation was not a party to the Contract it cannot be contractually liable to Bizzell even if there was a breach of the Contract. Fleetway Leasing Co. v. Wright, 697 A.2d 1003, *supra*.

77. Finally, Plaintiff does not identify any misrepresentation made by Tripwire Aviation which were material to the Contact *and* relied upon by Bizzell when it entered into the Contract with Tripwire South.

78. As such, Tripwire Aviation cannot be liable to Plaintiff for Counts I and II. See Weissberger, 90 A.3d 735, *supra*; Harrison v. Cabot Oil & Gas Corp., 887 F. Supp. 2d 592, *supra*.

16

## IV. THERE IS NO GENUINE DISPUTE AS TO ANY MATERIAL FACT RELATED TO THE CLAIMS AGAINST TRIPWIRE SOUTH AND TRIPWIRE SOUTH IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

79. Tripwire South did enter into an agreement to procure Comp-B for Bizzell on May 13, 2024, see Exhibit "I;" Tripwire South subsequently entered into a second agreement to procure Comp-B for Bizzell, See Exhibit "M"; Tripwire South remains unable to transfer any Comp-B to Bizzell due to Bizzell's own failure and/or refusal to obtain the proper licensing and permitting, see, e.g., Exhibits "U," "V," and "W." Tripwire South received Safety Data Sheets for Comp-B, see Exhibit "II;" and Tripwire South's representations related to the flaking of Comp-B were not material to the transaction at hand, see Exhibit "JJ."

80. As such, Bizzell is unable establish, by clear and convincing evidence, that Tripwire South is liable for Fraud or Fraudulent Inducement. See Weissberger, 90 A.3d 735, *supra*; Harrison v. Cabot Oil & Gas Corp., 887 F. Supp. 2d 592, *supra*.

81. Counts III, IV, V, and VII are contractual claims which allege Tripwire South failed to deliver Comp-B and Smokeless Powder and/or return the money paid to Tripwire South for Comp-B and Smokeless Powder. See, Complaint Counts III, IV, V, and VII.

82. However, and at all times relevant hereto, it was Bizzell's own failure and/or refusal to obtain the proper licensing and permitting which prevented Tripwire

4914-8701-9582, v. 1

South from delivering Comp-B and Smokeless Powder to Bizzell. See, e.g., Exhibits "U," "V," and "W."

83. The Arms Control Expert Control Act of 1976 ("AECA"), 22 U.S.C. 2751 *et seq.*, requires an ATF Dealer License for exporting military-grade explosives to foreign countries for military use. *See*, *e.g.*, 22 U.S.C. 2778.

84. "Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary. Specialty Tires of Am., Inc. v. CIT Group/Equipment Fin., Inc., 82 F. Supp. 2d 434, 438 (W.D. Pa. 2000).

85. A contractual duty or a duty to make compensation is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prevented or prohibited. . . (b) by a judicial, executive or administrative order made with due authority by a judge or other officer of the United States, or of any one of the United States." Litman v. Peoples Natural Gas Co., 449 A.2d 720, 724 (Pa. Super. Ct. 1982).

86. In the present matter, Tripwire South's ability to deliver Comp-B and Smokeless Powder to Bizzell was impracticable as a matter of law as Tripwire South

was prevented and prohibited from delivering military grade explosives to Bizzell pursuant to 22 U.S.C. 2778 due to Bizzell's own failure and/or refusal to obtain an ATF Dealer License. See, Exhibits "U," "V," and "W."

87. At all times relevant hereto, it was a basic assumption of the Contract that Bizzell would legally be allowed to receive and export the military grade explosives it purchased.

88. To date, Tripwire South incurred a financial loss in excess of $477,693,99 as a result of Bizzell's failure and/or refusal to obtain the proper licensing and permitting.

89. Count VI of the Compliant is a claim for Rescission and Restitution and seeks an alternate remedy for Plaintiff's claims of fraud and fraudulent inducement. See, Complaint ¶¶ 102, 104.

90. As discussed at length herein, Tripwire South did not engage in any fraud or fraudulent inducement, nor can Bizzell prove such claims by clear and convincing evidence.

4914-8701-9582, v. 1

## V. CONCLUSION

91. For the foregoing reasons, the allegations of Bizzell's Complaint lack any evidentiary support and as such there is no genuine dispute as to any material fact. Therefore, Defendants are entitled to judgment as a matter of law.

                            **TIMONEY KNOX, LLP**

By: _____
Matthew D. DeLeo, Esquire
Patrick M. Blair, Esquire (*Pro Hac Vice pending*)
*Attorneys for Defendants Tripwire South, LLC, Tripwire Aviation, LLC, and Ryan Morris*

**BARLEY SNYDER LLP**
Lindsey M. Cook, Esquire
Matthew Hennesy, Esquire
*Attorneys for Defendants Tripwire South, LLC, Tripwire Aviation, LLC, and Ryan Morris*

Date: May 13, 2025