PATRICK M. BLAIR (I.D. NO.
314670)
MATTHEW D. DELEO (I.D. NO.
331082)
**TIMONEY KNOX LLP**
400 MARYLAND DRIVE
P.O. BOX 7544
FORT WASHINGTON, PA 19034
TELEPHONE (215) 646-6000
pblair@timoneyknox.com
mdeleo@timoneyknox.com
*Attorneys for Defendants*

KANDICE K. HULL (I.D. NO. 86345)
SARAH HYSER-STAUB (I.D. NO.
315989)
LAUREN ANTHONY (I.D. NO.
324557)
**McNEES WALLACE & NURICK
LLC**
100 Pine Street, P.O. Box 1166
Harrisburg, PA  17108-1166
(717) 232-8000
khull@mcneeslaw.com
sstaub@mcneeslaw.com
lanthony@mcneeslaw.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BIZZELL CORPORATION | |
| Plaintiff, | |
| v. | CIVIL NO. 1:25-CV-00680-KMN |
| | (Judge Neary) |
| TRIPWIRE SOUTH, LLC; TRIPWIRE AVIATION, LLC; and RYAN MORRIS, ASHLEY MORRIS, JOSHUA MILLS, SKYBOLT CONSULTING GROUP LLC | JURY TRIAL DEMANDED |
| Defendants. | |

## <u>DEFENDANTS' ANSWER TO THE AMENDED COMPLAINT OF BIZZELL CORPORATION WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIMS</u>

Defendants/Counterclaim Plaintiffs Tripwire South, LLC, Tripwire Aviation,

LLC, Ryan Morris, Ashley Morris, Joshua Mills, and Skybolt Consulting Group,

LLC ("Defendants" or "Counterclaim Plaintiffs"), by and through their undersigned counsel, Timoney Knox, LLP and McNees Wallace & Nurick LLC, hereby file this Answer to the Amended Complaint filed by Bizzell Corporation ("Bizzell" or "Plaintiff"), along with affirmative defenses and counterclaims, and aver as follows:

## NATURE OF CASE[1]

1.      Denied. Defendants deny Bizzell entered into several contracts with Defendant Tripwire South, LLC ("Tripwire South") in April and June of 2024. At all times there was only one contract for the sale of military grade explosives, the terms of which were negotiated through Signal chats. The contract contemplated the sale of 220,000 pounds of Comp-B, with an additional sale of 200,000 pounds of Comp-B to be sold to Bizzell every month for 48-60 months. The contract also contemplated the sale of a) 226,716 pounds of M1 Smokeless Powder; b) 95,920 pounds of M6 Smokeless Powder; c) 25,950 pounds of M26 Smokeless Powder; and d" 140,320 pounds of M30 Smokeless Powder; e) 55,000 pounds of Black Powder "Snake Charges" and "spots;" and f) 20,000 pounds of Back Powder, collectively "Smokeless Powder". A true and correct copy of the contract terms (the "Contract") are attached hereto as Answer with Counterclaim, Exhibit "A."

---

[1] Defendants incorporate the headings used in the First Amended Complaint, where applicable, for ease of reference only.

It is denied that Bizzell fulfilled its contractual obligations to Tripwire South. At all times relevant hereto, Bizzell failed to pay Tripwire South for all the military grade explosives contemplated by the Contract. A true and correct copy of the outstanding invoices for the military-grade explosives contemplated by the Contract are collectively attached hereto as Answer with Counterclaim, Exhibit "B."

It is denied that Bizzell's inability to receive the military-grade explosives was due to any action or inaction of Tripwire South. At all times relevant hereto, it was Bizzell and Michael Hrobuchak's ("Hrobuchak") own actions and inactions which prevented Tripwire South from transferring military grade explosives to Bizzell. First, Bizzell failed to timely obtain all proper licensing and permitting, preventing Tripwire South from transferring any military grade explosives to Bizzell. For instance, the Contract estimated delivery of the military grade explosives within twenty (20) days. *See*, Answer with Counterclaim, Exhibit "A." Yet it took Bizzell over eight (8) months to obtain any ATF license whatsoever. A true and correct copy of Bizzell's February 3, 2025 ATF license is attached hereto as Answer with Counterclaim, Exhibit "C." Further, the ATF license Bizzell did obtain in February of 2025 was a license to import, not sell, explosives. *See*, Answer with Counterclaim, Exhibit "C."

Further, in regard to the Comp-B, Mike Hrobuchak ("Hrobuchak") interfered in Tripwire South's contract with J Squad International, LLC ("J Squad"), causing,

upon information and belief, the cancellation of that contract. *See, e.g.*, Amended Complaint, Exhibit "40B" (stating "J Squad had every intention of supplying Comp B to Tripwire, and it still does. Our conversations with representative from our supply chain confirm that discussions with the Government continue to progress and delivery of Comp B under the contract is being discussed albeit you client's violations of its non-disclosure and non-circumvent obligations under the contract by directly communicating with J Squad's supply base. Due to this unfortunate circumstance, additional discussion and protocols are being implemented to meet our contractual obligations."); *see, also*, a portion of Mick Kichman's Signal chats attached hereto as Answer with Counterclaim, Exhibit "D" (which establishes the Hrobuchak called Hawthorne military based regarding the Comp-B).

Finally, it is denied that Tripwire "decided to keep Bizzell's money." At all times relevant hereto, and as a result of Bizzell and Hrobuchak's own actions and inactions, Tripwire South incurred damages in excess of the amounts Bizzell paid to Tripwire South. True and correct copies of a fraction of the costs and damages Tripwire South incurred as a result of and as a result of Bizzell and Hrobuchak's actions are collectively attached hereto as Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial, if relevant.

2.    Denied. It is denied that Tripwire South's defenses to this lawsuit are undermined by Tripwire South's admissions and contemporaneous documents. Strict proof demanded at trial, if relevant.

3.    Denied. Tripwire South denies it is keeping Bizzell's $910,954.00 payment. At all times relevant hereto, and as a result of Bizzell and Hrobuchak's own actions and inactions, Tripwire South incurred damages in excess of the amounts Bizzell paid to Tripwire South. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial, if relevant.

It is further denied that Tripwire South did not have the ability to sell Comp-B. At all times relevant hereto, Tripwire South contracted with J Squad to procure Comp-B for Bizzell. A true and correct copy of the contract between Tripwire South and J Squad for the sale of Comp-B is attached hereto as Answer with Counterclaim, Exhibit "F." Upon information and belief, this contract was cancelled as a result of Hrobuchak's interference in the contract. At the request of Hrobuchak, Tripwire South then entered into a second contract to procure Comp-B for Bizzell. A true and correct copy of the contract between Tripwire South and Bonetti Explosives is attached hereto as Answer with Counterclaim, Exhibit "G." To date, Bizzell has failed and refused to accept the Comp-B that Tripwire South procured from Bonetti Explosives for Bizzell.

4.      Admitted in part. Denied in part. It is admitted that the 41,000 pounds of Comp-B was just an initial test shipment, and did not represent the full amount of Comp-B Bizzell contracted for. It is admitted that Tripwire South did not deliver the initial test shipment of 41,000 pounds of Comp-B. It is denied that this was due to any action or inaction of Tripwire South. At all times relevant hereto, and upon information and belief, Hrobuchak interfered in the contract between Tripwire South and J Squad causing the cancellation of that contract and Tripwire South's brief inability to deliver Comp-B to Bizzell.

It is denied that Tripwire South has no Comp-B to sell. Tripwire South continues to possess the Comp-B it procured for Bizzell, but Bizzell has failed and refused to accept the Comp-B.

Upon information and belief, it is denied that the "demilitarization" operation for Comp-B had not been authorized by the government. Upon information and belief, Hrobuchak's interference in the contact between Tripwire South and J Squad caused the government to cancel J Squad's contract to receive Comp-B. Thereafter, the exact same Comp-B that was available to J Squad became available to Bonetti Explosives, which Tripwire South then purchased from Bonetti Explosives. *See*, Answer with Counterclaim, Exhibit "G."

It is admitted that Hrobuchak sent a Signal chat purporting to cancel the portion of the Contract related to Comp-B. However, Hrobuchak subsequently

requested Tripwire South proceed with procuring Comp-B for Bizzell. Based on Hrobuchak's request, Tripwire South then entered into a second contract to procure Comp-B for Bizzell. *See*, Answer with Counterclaim, Exhibit "G." To date, Bizzell has failed and refused to accept the Comp-B Tripwire South procured for Bizzell.

5.      Denied. It is denied that Tripwire South received a full refund from J Squad, following Hrobuchak's interference in the contract between Tripwire South and J Squad. It is further denied that Tripwire South is keeping Bizzell's payment. At all times relevant hereto, and as a result of Bizzell and Hrobuchak's own actions and inactions, Tripwire South incurred damages in excess of the amounts Bizzell paid to Tripwire South. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial, if relevant.

6.      Denied. It is denied that Tripwire South is keeping Bizzell's Comp-B payment. At all times relevant hereto, and as a result of Bizzell and Hrobuchak's own actions and inactions, Tripwire South incurred damages in excess of the amounts Bizzell paid to Tripwire South. *See*, Answer with Counterclaim, Exhibit "E." It is further denied that Bizzell is entitled to any replacement costs for Comp-B. Tripwire South remains in possession of the Comp-B it procured for Bizzell. However, Bizzell continues to fail and refuse to accept the Comp-B Tripwire South procured for Bizzell. Strict proof demanded at trial, if relevant.

7.    Admitted in part. Denied in part. It is admitted that it took Bizzell in excess of eight (8) months to obtain an ATF license. *See*, Answer with Counterclaim, Exhibit "C." It is admitted that Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." It is denied that Tripwire South is keeping Bizzell's money. Strict proof demanded at trial if relevant.

8.    Admitted in part. Denied in part. It is admitted that Tripwire South allowed Bizzell to operate under its ATF permit for a period of time. However, per a letter dated July 19, 2024, Tripwire South revoked that permission due to Bizzell's failure to make timely payments for the military-grade explosives contemplated by the Contract. A true and correct copy of the July 29, 2024 letter is attached hereto as Answer with Counterclaim, Exhibit "H." It is admitted that Tripwire re-sold the Smokeless Powder to mitigate the damages it was incurring as a result of Bizzell's delay in obtaining all proper licensing and permitting. It is denied that Tripwire South knew it would take Bizzell in excess of eight (8) months to obtain an ATF license when Bizzell sent partial payments to Tripwire South for the military grade explosives contemplated in the Contract.  It is denied that Bizzell obtained the proper ATF license. *See*, Answer with Counterclaim, Exhibit "C." It is denied that Bizzell timely obtained an ATF license. *See*, Answer with Counterclaim, Exhibit "C." It is denied that Tripwire South received a windfall for mitigating its damages for the

Smokeless Powder. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E."

9.    Denied. It is denied that the damages Tripwire South incurred as a result of the actions and inactions of Bizzell and Hrobuchak were in any way related to a separate transaction with a separate buyer. It is denied that Tripwire has ever been awarded a judgment for the damages it incurred as a result of Bizzell and Hrobuchak's actions and inactions. Strict proof demanded at trial if relevant.

10.    Denied. It is denied that Tripwire South is keeping Bizzell's three million dollars. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." It is denied that Tripwire South has ever admitted that it is keeping Bizzell's payments without a legal or factual reason. It is denied that Tripwire South should return Bizzell's payment. It is denied that Bizzell should be compensated for the cost of replacement powders. Strict proof demanded at trial if relevant.

11.    Denied. It is denied that Defendants have attempted to hide behind a corporate shield. At all times relevant hereto, Tripwire South has been a limited liability company and is entitled to all the corporate protections afforded any limited liability company. Tripwire South denies the allegation it was formed in fraud as a

conclusion of law to which no further response is necessary. To the extent the allegation is factual, the same are denied. Strict proof demanded at trial, if relevant.

12.     Admitted in part. Denied in part. It is admitted that Charles Arant and Susan Boully were members of Tripwire South for a period of time. It is denied that Ashley Morris was Ryan Morris' wife at the time Tripwire South filed Articles of Formation. The remaining allegations of this paragraph purport to characterize Tripwire South's Articles of Formation, which is a document of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

13.     Admitted in part. Denied in part. It is admitted that Mr. Arant and Ms. Boully submitted sworn affidavits. It is denied that Mr. Arant and Ms. Boully were not members of Tripwire South in the past. It is denied Mr. Arant and Ms. Boully were falsely named as members of Tripwire South. First, Charles Arant and Susan Boully both had Tripwire South email accounts due to their status as members of Tripwire South. *See*, *e.g.*, a true and correct copy of a July 29, 2021 email from Charles Arant attached hereto as Answer with Counterclaim, Exhibit "I." In the July 29, 2021 email, Charles Arant, using the email charles.arant@tripwiresouth.com, suggests all the members of Tripwire South put in $50.00 per percent for the initial buy in to start Tripwire South. *See*, Answer with Counterclaim, Exhibit "I." Second, in the aforementioned email, Charles Arant provided the members of Tripwire South

with a draft Operating Agreement for Tripwire South. A true and correct copy of the Operating Agreement drafted by Charles Arant is attached hereto as Answer with Counterclaim, Exhibit "J." The draft Operating Agreement created by Charles Arant, and circulated to Tripwire South members from Charles Arant's Tripwire South email address, identifies the members of Tripwire South as follows: "Ryan J. Morris, 35%, Charles Arant, 25%, Susan Boully, 25%, and Josh Mills, 15%." *See*, Answer with Counterclaim, Exhibit "J."

Further Charles Arant and Susan Boully were named as "Responsible Persons" on Tripwire South's ATF license. A true and correct copy of a March 8, 2022 Notice of Clearance is attached hereto as Answer with Counterclaim, Exhibit "K." Per ATF regulations, a responsible person is "An individual who has the power to direct the management and polices of the applicant pertaining to explosive materials. Generally, the term includes partners, sole proprietors, site managers, corporate officers and directors, and majority shareholders." *See*, a true and correct copy of ATF's regulations attached hereto as Answer with Counterclaim, Exhibit "L," pg. 17.[2]

Finally, when completing the ATF form to become a "Responsible Person" on Tripwire South's ATF license, Charles Arant emailed Ryan Morris, from the

---

[2] Further to become a Responsible Person on an ATF license, one must provide your fingerprints and photographs to the ATF, which Charles Arant and Susan Boully provided when they applied to become "Responsible Persons" for Tripwire South.

email address charles.arant@tripwiresouth.com, and asked "Hey on the ATF Form what do I put in Questions 14-16." A true and correct copy of a Charles Arant's March 24, 2021 email is attached hereto as Answer with Counterclaim, Exhibit "M." Notably Susan Boully is also copied on this email at Susan.boully@tripsouth.com. In short, Charles Arant and Susan Boully were listed on Tripwire South's ATF license as "Responsible Parties" due the fact they were members of Tripwire South at the time.   In addition, the ATF contacted Charles Arant directly at Charles Arant's Tripwire email address to inquire as to any rain damage to Tripwire South's explosives. Charles Arant replied to this email.   *See* Answer with Counterclaim, Exhibit "N."

14.    Denied. Defendants deny the allegations of this paragraph as they constitute conclusions of law. To the extent this paragraph contains any factual allegations, the same are denied. Strict proof demanded at trial, if relevant.

15.    Denied. It is denied that Tripwire South pocketed Bizzell's 3.9 million dollars. At all times relevant hereto, and as a result of Bizzell and Hrobuchak's own actions and inactions, Tripwire South incurred damages in excess of the amounts Bizzell paid to Tripwire South. *See*, Answer with Counterclaim, Exhibit "E." It is further denied that the expenditures herein all involve natural persons who control and operate Tripwire South. Strict proof demanded at trial, if relevant.

16.    Denied. At all times relevant hereto, and as a result of Bizzell and Hrobuchak's own actions and inactions, Tripwire South incurred damages in excess of the amounts Bizzell paid to Tripwire South. *See*, Answer with Counterclaim, Exhibit "E." It is further denied that Bizzell is entitled to compensation for the cost of replacement products. At all times relevant hereto, it was Bizzell and Hrobuchak's own actions and inactions which prevented Bizzell from receiving military grade explosives form Tripwire South. *See*, *e.g.*, Answer with Counterclaim, Exhibit "C." Further, Tripwire South remains in possession of the Comp-B Tripwire South procured for Bizzell. To date, Bizzell has failed and refused to accept the Comp-B Tripwire South procured for Bizzell. It is denied that Bizzell's funds mysteriously vanished. It is further denied that Bizzell is entitled to pierce the corporate veil. It is further denied  that any person benefited from, or diverted, Bizzell's payments. As a result of Bizzell and Hrobuchak's own actions and inactions, Tripwire South incurred damages in excess of the amounts Bizzell paid to Tripwire South. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial, if relevant.

## **INTRODUCTION**

17.    Admitted.

18.    Admitted in part. Denied in part. It is admitted that the discussions covered quantity, price, technical specifications, and other material aspects. It is denied that discussions established an actual delivery date. It is denied that the Signal

chats did not contain the essential terms of the Contract. *See*, Answer with Counterclaim, Exhibit "A." It is further denied that that the parties only agreed to material terms for three purchases. *See*, Answer with Counterclaim, Exhibit "A."

19.    Denied. It is denied that Bizzell proceeded in good faith. At all times relevant hereto, Bizzell failed to timely obtain the proper licensing and failed to pay for all the military-grade explosives contemplated by the Contract. Further, Hrobuchak interfered in the contract between Tripwire South and J Squad, causing, upon information and belief, that contract to be cancelled. It is denied that Ryan Morris ("Morris") failed to observe standard industry practices or to meet agreed-upon deadlines for delivery. Strict proof demanded at trial, if relevant.

20.    Denied. The Signal chats are documents of independent legal significance, and any characterization of such is denied. By way of further response, it was Hrobuchak's interference in the contract between Tripwire South and J Squad which prevented the initial delivery of Comp-B to Bizzell. *See*, *e.g.*, Amended Complaint, Exhibit "40B." Hrobuchak subsequently requested Tripwire South proceed with procuring Comp-B for Bizzell. As a result of this request, Tripwire South then entered into a second contract to procure Comp-B for Bizzell. *See*, Answer with Counterclaim, Exhibit "G." To date, Tripwire South remains in possession of the Comp-B it procured for Bizzell yet Bizzell fails and refuses to accept the Comp-B. Strict proof demanded at trial, if relevant.

21.    Denied. This paragraph misstates and mischaracterizes the cancellation of the initial Comp-B contract. At all times relevant hereto, and upon information and belief, Hrobuchak interfered in Tripwire South's contract with J Squad, causing the cancellation of that contract. *See*, *e.g.*, Amended Complaint, Exhibit "40B;" *see*, *also*, Answer with Counterclaim, Exhibit "D." Defendants further deny the allegations of this paragraph as it conflates Morris, an employee of Tripwire South, and Tripwire South, a limited liability company. To the extent any money was to be returned to Bizzell, the same being denied, it would come from Tripwire South, not its employee Morris. Tripwire South further denies that Tripwire South failed to return Bizzell's payment. At all times relevant hereto, and following the alleged cancellation of the Comp-B order, Hrobuchak requested Tripwire South continue its effort to procure Comp-B for Bizzell. As such, Tripwire South entered into a second contract to procure Comp-B for Bizzell. *See*, Answer with Counterclaim, Exhibit "G." To date, Tripwire South remains in possession of the Comp-B in procured for Bizzell yet Bizzell fails and refuses to accept the Comp-B Tripwire South procured for Bizzell. Strict proof demanded at trial, if relevant.

22.    Admitted in part. Denied in part. It is admitted that Tripwire South sold the Smokeless Powder it procured for Bizzell to mitigate its damages. It is denied that Bizzell paid for the full amount of Smokeless Powder contemplated by the contact. *See*, Answer with Counterclaim, Exhibit "B." It is further denied that Bizzell

timely obtained the proper ATF license to receive the Smokeless Powder Tripwire South procured for Bizzell. *See*, Answer with Counterclaim, Exhibit "C." Strict proof demanded at trial, if relevant.

23.    Admitted in part. Denied in part. It is admitted that Tripwire South incurred damages in excess of the amounts paid by Bizzell, thereby preventing the return of Bizzell's partial payments. *See*, Answer with Counterclaim, Exhibit "E." It is denied that Tripwire South fraudulently took millions from Bizzell or that Bizzell is owed any money. It is further denied that Bizzell should be compensated for the cost of procuring material from other suppliers. At all times relevant hereto it was the actions and inactions of Bizzell and Hrobuchak which prevented Tripwire South from transferring the military grade explosives to Bizzell. *See*, *e.g.*, Answer with Counterclaim, Exhibit "C." Moreover, Tripwire South remains in possession of the Comp-B it procured for Bizzell yet Bizzell fails and refuses to accept the Comp-B Tripwire South procured for Bizzell. Strict proof demanded at trial, if relevant.

## **PARTIES**

24.    Denied. After a reasonable investigation, Defendants are without sufficient information to admit or deny the allegations of this paragraph. Strict proof demanded at trial, if relevant.

25.    Admitted in part. Denied in part. It is admitted that several individuals, including Morris, founded Tripwire South. It is admitted that Morris is the president

of Tripwire South. It is admitted that Morris is a resident of Pennsylvania. It is admitted that Morris is a member of the Gettysburg Area School District School Board and a member of the Liberty Township Police Department. It is denied that Morris owns any of the companies identified in this paragraph. Strict proof demanded at trial, if relevant.

26.    Admitted in part. Denied in part. It is admitted that Ashley Morris is the spouse of Ryan Morris. It is admitted that Ashley Morris is the Vice President of Tripwire South. It is admitted that Ashley Morris is a resident of Pennsylvania. It is denied that Ashley Morris was involved in the transactions at issue here. The remaining allegations of this paragraph purport to characterize Tripwire South's Articles of Formation, which is a document of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

27.    Admitted in part. Denied in part. It is admitted that Joshua Mills ("Mills") is the COO of Tripwire South. It is admitted that Mills was involved in communications related to the transactions at issue here. It is admitted that Mills is a resident of Pennsylvania. The remaining allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

28.    Denied. Tripwire South is a limited liability company with a principal place of business in Gettysburg, PA. Strict proof demanded at trial, if relevant.

29.    Admitted in part. Denied in part. It is admitted that Tripwire South is registered as a Service-Disabled Veteran Woman-Owned Business. It is denied that Tripwire South is certified as a Service-Disabled Veteran Woman-Owned Business. Strict proof demanded at trial, if relevant.

30.    Admitted in part. Denied in part. It is admitted that no member of Tripwire South is a citizen of Wyoming. The remaining allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

31.    Admitted in part. Denied in part. It is admitted that Tripwire Aviation is a limited liability company, formed under the laws of Pennsylvania, with a principal place of business in Gettysburg, PA. It is admitted that Michael Dickerson is the only member of Tripwire Aviation and that he is not a citizen of Wyoming. It is admitted that Morris is a member appointed manager. It is denied that Morris controls Tripwire Aviation. Strict proof demanded at trial, if relevant.

32.    Admitted.

## JURISDICTION AND VENUE

33.    Admitted in part. Denied in part. It is admitted that Tripwire South is a limited liability company and consists of Pennsylvania citizens. It is admitted that no member of Tripwire South, Tripwire Aviation, or Skybolt are citizens of Wyoming. It is admitted that no individual defendant is a citizen of Wyoming. All

other allegations are denied as they constitute conclusions of law, to which no further response is necessary. Strict proof demanded at trial, if relevant.

34.    Admitted.

35.    Admitted.

## THE PARTIES' NEGOTIATIONS AND TRIPWIRE'S FAILURE TO DELIVER

36.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. It is further denied that Michael Kichman is a senior Tripwire South representative. Strict proof demanded at trial, if relevant.

**I.    Negotiations for accelerant powders begin.**

37.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

38.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

39.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

40.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

41.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

42.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

43.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

44.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

45.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

46.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

47.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. It is further denied that Michael Kichman is a senior Tripwire South representative. Strict proof demanded at trial, if relevant.

48.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

49.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

50.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

51.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

52.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

53.    Denied. Defendants deny the allegations of this paragraph contain all the terms of the Contract between the parties. *See*, Answer with Counterclaim, Exhibits "A" and "B."

## II.    Tripwire fails to deliver, keeps Bizzell's money, and sells the powders to another buyer at a higher price.

54.    Admitted in part. Denied in part. It is admitted that personnel of Tripwire South, Bizzell, Fluet, and Bizzell's logistics agent corresponded regarding export licenses, inspection certificates, and other details. Defendants deny the characterization that Morris assured Bizzell that the powders would be delivered as this tends to conflate Morris and Tripwire South. At all times relevant hereto, Morris, on behalf of Tripwire South, communicated with Hrobuchak, on behalf of Bizzell. Defendants further deny that Tripwire South assured Bizzell that the powders would be delivered. At all times relevant hereto, the sale of military grade explosives is a highly regulated field, requiring compliance with numerous laws and regulations. *See*, *e.g.*, Answer with Counterclaim, Exhibit "L." Thus, the delivery of any military-grade explosives required, as a pre-requisite, that Bizzell comply with all licensing and permitting requirements. Bizzell failed to do so. *See*, *e.g.*, Answer with Counterclaim, Exhibit "C." Strict proof demanded at trial, if relevant.

55.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

56.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

57.    Admitted in part. Denied in part. It is admitted that Tripwire South allowed Bizzell to operate under its ATF permit for a period of time. However, per a letter dated July 19, 2024, Tripwire South revoked that permission due to Bizzell's failure to make timely payments for the military-grade explosives contemplated by the Contract. *See*, Answer with Counterclaim, Exhibit "H." By way of further response, the allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

58.    Admitted in part. Denied in part. It is admitted that Bizzell obtained an ATF license on February 3, 2025, over eight (8) months after the parties contracted for the sale of military-grade explosives. It is denied that the ATF importer's license authorizes all activities encompassed by an ATF dealer's license. Strict proof demanded at trial, if relevant.

59.    Admitted in part. Denied in part. It is admitted that Tripwire South ceased communicating with Bizzell about the Smokeless Powder on or around the time that Bizzell obtained the untimely and improper ATF license. It is admitted that Tripwire South sold the Smokeless Powder to a third party to mitigate its damages. The remainder of the allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

60.    Admitted in part. Denied in part. It is admitted that Tripwire South sold the Smokeless Powder to a third party to mitigate its damages related to Bizzell's failure to timely obtain all proper licensing and permitting. The remainder of the allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

## III.    Tripwire falsely represents that it can sell Comp-B to Bizzell out of the Hawthorne Army Depot.

61.    Admitted in part. Denied in part. It is admitted that Tripwire South did not notify Bizzell that it mitigated the damages it was incurring as a result of Bizzell and Hrobuchak's actions and inactions. It is denied that Tripwire South is required to repay Bizzell.  At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell, thereby preventing the return of Bizzell's

partial payments. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial, if relevant.

62.    Admitted in part. Denied in part. It is admitted that Tripwire South and Bizzell negotiated a sale of Comp-B. Defendants deny the characterization that Morris and Bizzell negotiated the sale of Comp-B as this conflates Morris and Tripwire South. At all times relevant hereto, Morris, on behalf of Tripwire South, and Hrobuchak, on behalf of Bizzell, negotiated the sale of Comp-B. Strict proof demanded at trial, if relevant.

63.    Admitted in part. Denied in part. It is admitted that Morris, on behalf of Tripwire South, indicated that Tripwire South could contract with a third party to obtain Comp-B. It is denied that Morris, on behalf of Tripwire South, stated Tripwire South had Comp-B that had be demilitarized at HWAD. At all times relevant hereto, Morris, on behalf of Tripwire South, indicated Tripwire South had the ability to contract with a third party who was representing to Tripwire South that it had demilitarized Comp-B for sale. *See, e.g.*, Answer with Counterclaim, Exhibit "F." Strict proof demanded at trial, if relevant.

64.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

65.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

66.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

67. Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

68.    Admitted in part. Denied in part. It is admitted that Tripwire South had a contract with J Squad. After a reasonable investigation, Defendants do not have sufficient information to admit or deny who J Squad contracted with to purchase Comp-B, the same being denied. Strict proof demanded at trial, if relevant.

69.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

## IV.    Tripwire promises Comp-B despite the situation at HWAD.

70.    Denied. At all times relevant hereto Morris, on behalf of Tripwire South, and Hrobuchak, on behalf of Bizzell, negotiated the sale of military-grade explosives. Defendants further deny the allegation that Morris, on behalf of Tripwire

South, had any knowledge as to whether J Squad had received all the necessary approvals and processes at HWAD. At all times relevant hereto, Morris, on behalf of Tripwire South, indicated Tripwire South had the ability to contract with a third party who was representing to Tripwire South that it had demilitarized Comp-B for sale. *See*, *e.g.*, Answer with Counterclaim, Exhibit "F." Strict proof demanded at trial, if relevant.

71.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

72.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

73.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

74.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

75.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

76.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

77.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

78.    Denied. It is denied that Bizzell never made a commitment to purchase a set amount of Comp-B. *See*, *e.g.*, Answer with Counterclaim, Exhibit "A." Strict proof demanded at trial, if relevant.

79.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

80.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. By way of further response, it was Bizzell which requested the Comp-B not be flaked. A true and correct copy of a Signal chat between Hrobuchak and Morris

attached hereto as Answer with Counterclaim, Exhibit "O." Strict proof demanded at trial, if relevant.

81.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

82.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

83.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

84.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. By way of further response, after a reasonable investigation, Defendants are without sufficient knowledge to admit or deny what Hrobuchak meant by the term military transport, the same being denied. Strict proof demanded at trial, if relevant.

85.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

86. Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

87. Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

88. Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. By way of further response, after a reasonable investigation, Defendants are without sufficient knowledge to admit or deny what Hrobuchak meant by a plane leaving on the 8th, the same being denied. Strict proof demanded at trial, if relevant.

89. Denied. After a reasonable investigation, Tripwire South is without sufficient information to admit or deny whether there was de-milled Comp-B available for delivery from Hawthorne Army Depot in July of 2024. At all times relevant hereto, Morris, on behalf of Tripwire South, indicated Tripwire South had the ability to contract with a third party who was representing to Tripwire South that it had demilitarized Comp-B for sale. *See*, *e.g.*, Answer with Counterclaim, Exhibit "F." By way of further response, The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

90.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

**V.    Bizzell learns the truth about the Comp-B.**

91.    Denied. At all times relevant hereto, Morris, on behalf of Tripwire South, indicated Tripwire South had the ability to contract with a third party who was representing to Tripwire South that it had demilitarized Comp-B for sale. *See*, *e.g.*, Answer with Counterclaim, Exhibit "F."

92.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. By way of further response, and after a reasonable investigation, Defendants do not have sufficient information to admit or deny whether a command team oversaw the process of releasing Comp-B to commercial vendors, the same being denied. Strict proof demanded at trial, if relevant.

93.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. By way of further response, Kichman had no authority to speak on behalf of Tripwire South. Strict proof demanded at trial, if relevant.

94.    Admitted in part. Denied in part. It is admitted that Morris, acting on behalf of Tripwire South was frustrated with Hrobuchak's interference in the

contract between Tripwire South and J Squad. It is admitted that Hrobuchak contacted HWAD directly. By way of further response, the allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. By way of further response, after a reasonable investigation, Tripwire South is without sufficient information to admit or deny what Hrobuchak was referring to in his Signal chat, the same being denied. Further, after a reasonable investigation, Tripwire South is without sufficient information to admit or deny whether Presidential authorization for demilling Comp-B had occurred, the same being denied. Strict proof demanded at trial, if relevant.

## VI.    The parties agree to cancel the Comp-B contract.

95.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

96.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

97.    Denied. Tripwire South denies it had an obligation to return any money to Bizzell. In fact, at all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell, thereby preventing the return of Bizzell's

partial payments. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial, if relevant.

98.    Denied. At all times relevant hereto, and following the alleged cancellation of the Comp-B order, Hrobuchak requested Tripwire South continue its effort to procure Comp-B for Bizzell. As such, Tripwire South entered into a second contract to procure Comp-B for Bizzell. *See*, Answer with Counterclaim, Exhibit "G." By way of further response, the allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

## VII.    Morris files for personal bankruptcy while using Bizzell's money to fund a new venture and a lavish lifestyle.

99.    Admitted in part. Denied in part. It is admitted that Morris filed for bankruptcy. By way of further response, Defendants aver the allegations of this paragraph contain immaterial and impertinent matter that are unrelated to Bizzell's claims or prayer for relief. Strict proof demanded at trial, if relevant.

100.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. By way of further response, Defendants aver the allegations of this paragraph contain immaterial and impertinent matter that are unrelated to Bizzell's claims or prayer for relief. By way of further response, Morris is the President of Tripwire

South and has no ownership in Tripwire South. *See*, *e.g.*, documents filed under seal. Strict proof demanded at trial, if relevant.

101.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. By way of further response, Defendants aver the allegations of this paragraph contain immaterial and impertinent matter that are unrelated to Bizzell's claims or prayer for relief. Strict proof demanded at trial, if relevant.

102.    Admitted in part. Denied in part. It is admitted that Morris married Ashley Morris. Defendants deny the remainder of the allegations of this paragraph. By way of further response, Defendants aver the allegations of this paragraph contain immaterial and impertinent matter that are unrelated to Bizzell's claims or prayer for relief. Strict proof demanded at trial, if relevant.

103.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

104.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

105.    Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is

denied. By way of further response, Defendants aver the allegations of this paragraph contain immaterial and impertinent matter that are unrelated to Bizzell's claims or prayer for relief. Strict proof demanded at trial, if relevant.

106.   Denied. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E."

107.   Denied. It is denied that Morris, an employee of Tripwire South, hid funds belonging to Bizzell and/or transferred Tripwire South's funds to third parties. It is denied that Morris took Bizzell's payment. At all times relevant hereto, Bizzell paid Tripwire South, not Morris, for the military-grade explosives. *See*, *e.g.*, Amended Complaint, Exhibit "20." By way of further response, and at all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." Further, it is denied that Tripwire Aviation was set up by Tripwire Group. At all times relevant hereto, Tripwire Aviation was set up by Michael Dickerson. A true and correct copy of the Operating Agreement of Tripwire Aviation is attached hereto as Answer with Counterclaim, Exhibit "P."

108.   Admitted in part. Denied in part. It is admitted that Tripwire Aviation purchased helicopters. It is admitted that Tripwire Aviation entered into a loan agreement with Tripwire South. The remainder of the allegations of this paragraph

purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

109.  Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

110.  Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. By way of further response, Tripwire South did not pilfer funds from Bizzell. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial, if relevant.

111.  Denied. The allegations of this paragraph purport to characterize documents of independent legal significance, and any characterization of such is denied. Strict proof demanded at trial, if relevant.

112.  Denied. Defendants deny the characterization of this paragraph. The allegations of this paragraph conflate Morris and Tripwire South. At all times relevant hereto, Bizzell paid Tripwire South, not Morris. *See*, *e.g.*, Amended Complaint, Exhibit "20." By way of further response, Tripwire South did not defraud Bizzell and was not flush with Bizzell's money. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*,

Answer with Counterclaim, Exhibit "E." By way of further response, Tripwire South purchased a granite quarry from Morris for its business. Strict proof demanded at trial, if relevant.

113.  Denied. It is denied that Tripwire South kept Bizzell's money. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." By way of further response, Tripwire South is a limited liability company and Plaintiff has not established any basis to disregard the corporate veil. Strict proof demanded at trial if relevant.

## COUNT I
## FRAUD

114.  Denied. This paragraph amounts to incorporation to which no further response is necessary.

115.  Denied. At all times relevant hereto, Morris, on behalf of Tripwire South, indicated Tripwire South had the ability to contract with a third party who was representing to Tripwire South that it had demilitarized Comp-B for sale. *See*, *e.g.*, Answer with Counterclaim, Exhibit "F." By way of further response, the Safety Data Sheets Tripwire South obtained for the Comp-B were provided to Tripwire South by J Squad. By way of further response, Tripwire South offered to have the Comp-B flaked but Bizzell declined that service. *See*, Answer with Counterclaim, Exhibit "O." By way of further response, it is admitted that Tripwire South allowed

Bizzell to operate under its ATF permit for a period of time. However, per a letter dated July 19, 2024, Tripwire South revoked that permission due to Bizzell's failure to make timely payments for the military-grade explosives contemplated by the Contract. *See*, Answer with Counterclaim, Exhibit H." Strict proof demanded at trial, if relevant.

116.   Denied. It is denied that Morris or Tripwire South ever made any representations knowing they were false. Strict proof demanded at trial, if relevant.

117.   Denied. It is denied that Morris or Tripwire South ever made any representations with reckless disregard for their truth or falsity. Strict proof demanded at trial, if relevant.

118.   Denied. It is denied that Morris or Tripwire South ever made any representations with the intent to mislead Bizzell. At all times relevant hereto, Morris, on behalf of Tripwire South, indicated Tripwire South had the ability to contract with a third party who was representing to Tripwire South that it had demilitarized Comp-B for sale. *See*, *e.g.*, Answer with Counterclaim, Exhibit "F."

119.   Denied. It is denied that Morris and Tripwire South ever made false representations which Bizzell relied on. Defendants further deny that Tripwire South lied. Strict proof demanded at trial, if relevant.

120.   Denied. It is denied that Morris or Tripwire South made false representations. After a reasonable investigation, Tripwire South is without

sufficient information to admit or deny what Bizzell would have done if Tripwire South had not indicated Tripwire South had the ability to contract with a third party who was representing to Tripwire South that it had demilitarized Comp-B for sale, the same being denied. Strict proof demanded at trial, if relevant.

121.   Denied. It is denied that Morris or Tripwire South ever made false representations. Strict proof demanded at trial, if relevant.

122.   Denied. It is denied that Bizzell incurred any damages as a result of the actions or inactions of Morris or Tripwire South. At all times relevant hereto, any damages Bizzell incurred were the result of Bizzell and Hrobuchak's own actions and inactions, such as failing to timely obtain all proper licensing and permitting or interfering in the contract between Tripwire South and J Squad. Defendants further deny that Bizzell is entitled to any replacement costs for the Comp-B as Tripwire South continues to possess the Comp-B Tripwire South procured for Bizzell yet Bizzell fails and refuses to accept the Comp-B Tripwire South procured for Bizzell. Strict proof demanded at trial, if relevant.

123.   Denied. After a reasonable investigation, Defendants are unaware of any reputational damages suffered by Bizzell as a result of Tripwire South, the same being denied. By way of further response, Defendants believe and therefore aver that any reputational damage incurred by Bizzell is due to the actions of Hrobuchak in Europe. *See*, *e.g.*, https://bizzell.eu/ (stating, "URGENT LEGAL NOTICE –

IMMEDIATE ACTION REQUIRED. It has come to the direct attention of Bizzell Europe that our majority shareholder, **Michael Paul Hrobuchak**, has unilaterally and without consultation or consent established a company in Romania under the name BIZZELL TECHNOLOGY. We unequivocally state that any and all contact attempts made by BIZZELL TECHNOLOGY to our clients, partners, or associates will be considered a deliberate act of unfair competition and a serious breach of ethical and legal standards. Such actions will be met with immediate legal proceedings against both BIZZELL TECHNOLOGY and **Michael Paul Hrobuchak**, with the full extent of applicable law. In light of these developments, we firmly denounce and condemn **Mr. Hrobuchak's** conduct and the creation of a company bearing a similar name, clearly aimed at misleading clients, infringing upon our market presence, and undermining the co-management structure of Bizzell Europe. This move constitutes a serious violation of trust and governance. We therefore formally and publicly dissociate ourselves from the newly created entity. BIZZELL TECHNOLOGY is not affiliated with, related to, or authorized by Bizzell Europe in any form whatsoever. Any attempt to suggest otherwise is false, misleading, and will be pursued accordingly. We urge all clients, institutions, and business partners to completely disregard any and all communications originating from BIZZELL TECHNOLOGY, BIZZELL CORPORATION or from **Michael**

**Paul Hrobuchak** in a capacity relating to Bizzell Europe. No such communications are authorized or legitimate."). Strict proof demanded at trial, if relevant.

124.    Denied. It is denied that Morris and Tripwire South acted with reckless indifference to Bizzell's rights. It is further denied that Morris and Tripwire South engaged in persistent fraudulent deception. At all times relevant hereto, Morris, on behalf of Tripwire South, indicated Tripwire South had the ability to contract with third parties who were representing to Tripwire South that they had military-grade explosives for sale. *See*, *e.g.*, Answer with Counterclaim, Exhibit "F." By way of further response, Defendants deny that Bizzell is entitled to sanctions or punitive damages. Strict proof demanded at trial if relevant.

**COUNT II**
**FRAUDULENT INDUCEMENT**

125.    Denied. This paragraph amounts to incorporation to which no further response is necessary.

126.    Admitted in part. Denied in part. It is admitted that Morris, on behalf of Tripwire South, indicated Tripwire South had the ability to contract with third parties who represented they had the ability to procure military-grade explosives for Tripwire South. *See*, *e.g.*, Answer with Counterclaim, Exhibit "F." By way of further answer, Tripwire South did procure Smokeless Powder for Bizzell as Bizzell admits. Defendants deny there was anything improper Tripwire South's representations. Strict proof demanded at trial, if relevant.

127.    Denied. It is denied that Morris or Tripwire South knowingly made any false representations. Strict proof demanded at trial, if relevant.

128.    Denied. It is denied that Morris or Tripwire South made any representations with reckless disregard for their truth or falsity. Strict proof demanded at trial, if relevant.

129.    Denied. It is denied that Morris or Tripwire South made any misrepresentation to mislead Bizzell. Strict proof demanded at trial, if relevant.

130.    Denied. It is denied that Morris or Tripwire South made false representations. After a reasonable investigation, Tripwire South is without sufficient information to admit or deny what Bizzell would have done if Tripwire South had not indicated Tripwire South had the ability to contract with third parties who were representing to Tripwire South they had military-grade explosives for sale, the same being denied. Strict proof demanded at trial, if relevant.

131.    Denied. The allegations of this paragraph constitute conclusion of law to which no further response is necessary. Strict proof demanded at trial, if relevant.

132.    Denied. It is denied that Bizzell incurred any damages as a result of the actions or inactions of Morris or Tripwire South. At all times relevant hereto, any damages Bizzell incurred were the result of Bizzell and Hrobuchak's own actions and inactions, such as failing to timely obtain all proper licensing and permitting and interfering in the contract between Tripwire South and J Squad. *See*, Answer with

Counterclaim, Exhibits "C" and "D." Defendants further deny that Bizzell is entitled to any replacement costs for the Comp-B as Tripwire South continues to possess the Comp-B Tripwire South procured for Bizzell, yet Bizzell fails and refuses to accept the Comp-B Tripwire South procured for Bizzell. Strict proof demanded at trial, if relevant.

133.    Denied. After a reasonable investigation, Defendants are unaware of any reputational damages suffered by Bizzell as a result of Tripwire South, the same being denied. By way of further response, Defendants believe and therefore aver that any reputational damage incurred by Bizzell is due to the actions of Hrobuchak in Europe. *See*, *e.g.*, https://bizzell.eu/ (stating, "URGENT LEGAL NOTICE – IMMEDIATE ACTION REQUIRED. It has come to the direct attention of Bizzell Europe that our majority shareholder, **Michael Paul Hrobuchak**, has unilaterally and without consultation or consent established a company in Romania under the name BIZZELL TECHNOLOGY. We unequivocally state that any and all contact attempts made by BIZZELL TECHNOLOGY to our clients, partners, or associates will be considered a deliberate act of unfair competition and a serious breach of ethical and legal standards. Such actions will be met with immediate legal proceedings against both BIZZELL TECHNOLOGY and **Michael Paul Hrobuchak**, with the full extent of applicable law. In light of these developments, we firmly denounce and condemn **Mr. Hrobuchak's** conduct and the creation of a

company bearing a similar name, clearly aimed at misleading clients, infringing upon our market presence, and undermining the co-management structure of Bizzell Europe. This move constitutes a serious violation of trust and governance. We therefore formally and publicly dissociate ourselves from the newly created entity. BIZZELL TECHNOLOGY is not affiliated with, related to, or authorized by Bizzell Europe in any form whatsoever. Any attempt to suggest otherwise is false, misleading, and will be pursued accordingly. We urge all clients, institutions, and business partners to completely disregard any and all communications originating from BIZZELL TECHNOLOGY, BIZZELL CORPORATION or from **Michael Paul Hrobuchak** in a capacity relating to Bizzell Europe. No such communications are authorized or legitimate."). Strict proof demanded at trial, if relevant.

134.    Denied. It is denied that Morris and Tripwire South acted with reckless indifference to Bizzell's rights. It is further denied that Morris and Tripwire South engaged in persistent fraudulent deception. At all times relevant hereto, Morris, on behalf of Tripwire South, indicated Tripwire South had the ability to contract with third parties who were representing to Tripwire South that they had military-grade explosives for sale. *See*, *e.g.*, Answer with Counterclaim, Exhibit "F." By way of further response, Defendants deny that Bizzell is entitled to sanctions or punitive damages. Strict proof demanded at trial if relevant.

## COUNT III
## BREACH OF CONTRACT (COMP-B)

135.    Denied. This paragraph amounts to incorporation to which no further response is necessary.

136.    Admitted in part. Denied in part. It is admitted that Tripwire South and Bizzell entered in a valid, binding, and enforceable contract. It is denied that this paragraph accurately states the terms of the Contract. *See*, Answer with Counterclaim, Exhibit "A." Strict proof demanded at trial if relevant.

137.    Admitted in part. Denied in part. It is admitted that Tripwire South received and acknowledged Bizzell's payment. It is denied that Bizzell fulfilled its contractual obligations. To date, Bizzell has failed and refused to pay for all the military-grade explosives contemplated by the Contract. *See*, Answer with Counterclaim, Exhibit "B." Strict proof demanded at trial if relevant.

138.    Admitted in part. Denied in part. It is admitted that Tripwire South did not deliver Comp-B within 20 days. It is denied that any action by Tripwire South prevented the delivery of the Comp-B. In fact, and at all times relevant hereto, it was the actions and inactions of Bizzell and Hrobuchak which prevented Tripwire South from transferring Comp-B to Bizzell. Bizzell failed to timely obtain the proper licensing and permitting. *See, e.g.*, Answer with Counterclaim, Exhibit "C." Further, Hrobuchak interfered in the contract between Tripwire South and J Squad causing,

45

upon information and belief, the cancellation of that contract. *See*, Answer with Counterclaim, Exhibit "D." Strict proof demanded at trial, if relevant.

139.   Denied. Tripwire South has never requested Bizzell return money to Tripwire South. Further, and at all times relevant hereto, it was Bizzell that breached the Contract. Bizzell failed to pay for all the military-grade explosives contemplated by the Contract. *See*, Answer with Counterclaim, Exhibit "B." Bizzell failed to timely obtain all proper licensing and permitting. *See*, *e.g.*, Answer with Counterclaim, Exhibit "C." Finally, Hrobuchak interfered in the contract between Tripwire South and J Squad. Strict proof demanded at trial, if relevant.

140.    Denied. It is denied that Bizzell incurred any damages as a result of the actions or inactions of Tripwire South. At all times relevant hereto, any damages Bizzell incurred were the result of Bizzell and Hrobuchak's own actions and inactions, such as failing to timely obtain a proper ATF license. *See*, *e.g.*, Answer with Counterclaim, Exhibit "C." Defendants further deny that Bizzell is entitled to any replacement costs for the Comp-B as Tripwire South continues to possess the Comp-B Tripwire South procured for Bizzell, yet Bizzell fails and refuses to accept the Comp-B Tripwire South procured for Bizzell. Finally, and at all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." It is further denied that Tripwire South has any obligation to return Bizzell's payment. At all times relevant hereto, Tripwire

South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial, if relevant. Strict proof demanded at trial, if relevant.

## COUNT IV
## BREACH OF CONTRACT (BLACK POWDER)

141.  Denied. This paragraph amounts to incorporation to which no further response is necessary.

142.  Admitted in part. Denied in part. It is admitted that Tripwire South and Bizzell entered in a valid, binding, and enforceable contract. It is denied that this paragraph accurately states the terms of the Contract. *See*, Answer with Counterclaim, Exhibit "A." Strict proof demanded at trial if relevant.

143.  Admitted in part. Denied in part. It is admitted that Tripwire South received and acknowledged Bizzell's payment. It is denied that Bizzell fulfilled its contractual obligations. To date, Bizzell has failed and refused to pay for all the military-grade explosives contemplated by the Contract. *See*, Answer with Counterclaim, Exhibit "B." It is further denied that Tripwire South has any obligation to return Bizzell's payment. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial if relevant.

144.  Denied. It is denied that any failure to deliver Smokeless Powder was the result of any action or inaction by Tripwire South. In fact, at all times relevant

hereto, it was the actions and inactions of Bizzell in failing to timely obtain all proper licensing and permitting which prevented the transfer of Smokeless Powder to Bizzell. *See*, *e.g.*, Answer with Counterclaim, Exhibit "C." It is further denied that Tripwire South has any obligation to return Bizzell's money. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial if relevant.

145.    Denied. It is denied that Bizzell incurred any damages as a result of the actions or inactions of Tripwire South. At all times relevant hereto, any damages Bizzell incurred were the result of Bizzell's own actions and inactions. It is further denied that Tripwire South has any obligation to return Bizzell's payment. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial, if relevant.

## COUNT V
## BREACH OF CONTRACT (M6 POWDER)

146.    Denied. This paragraph amounts to incorporation to which no further response is necessary.

147.    Admitted in part. Denied in part. It is admitted that Tripwire South and Bizzell entered in a valid, binding, and enforceable contract. It is denied that this

paragraph accurately states the terms of the Contract. *See*, Answer with Counterclaim, Exhibit "A." Strict proof demanded at trial if relevant.

148.  Admitted in part. Denied in part. It is admitted that Tripwire South received and acknowledged Bizzell's payment. It is denied that Bizzell fulfilled its contractual obligations. To date, Bizzell has failed and refused to pay for all the military-grade explosives contemplated by the Contract. *See*, Answer with Counterclaim, Exhibit "B." It is further denied that Tripwire South has any obligation to return Bizzell's payment. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial if relevant.

149.  Denied. It is denied that any failure to deliver Smokeless Powder was the result of any action or inaction by Tripwire South. In fact, at all times relevant hereto, it was the actions and inactions of Bizzell in failing to timely obtain all proper licensing and permitting which prevented the transfer of Smokeless Powder to Bizzell. *See*, *e.g.*, Answer with Counterclaim, Exhibit "C." It is further denied that Tripwire South has any obligation to return Bizzell's money. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, *e.g.*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial if relevant.

150.    Denied. It is denied that Bizzell incurred any damages as a result of the actions or inactions of Tripwire South. At all times relevant hereto, any damages Bizzell incurred were the result of Bizzell's own actions and inactions, such as failing to timely obtain all proper licensing and permitting. *See*, *e.g.*, Answer with Counterclaim, Exhibit "C." It is further denied that Tripwire South has any obligation to return Bizzell's payment. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial, if relevant.

## COUNT VI
## RESCISSION AND RESTITUTION

151.    Denied. This paragraph amounts to incorporation to which no further response is necessary.

152.    Denied. It is denied that Tripwire South fraudulently induced Bizzell to enter into valid, binding, and enforceable contracts. At all times relevant hereto, Morris, on behalf of Tripwire South, indicated Tripwire South had the ability to contract with third parties who represented they had the ability to procure military-grade explosives for Tripwire South. *See*, *e.g.*, Answer with Counterclaim, Exhibit "F." It is further denied that this paragraph accurately states the terms of the Contract. *See*, Answer with Counterclaim, Exhibit "A." Strict proof demanded at trial, if relevant.

153.    Admitted in part. Denied in part. It is admitted that Bizzell paid the payments alleged in this paragraph. It is denied that this amount accurately reflects the terms of the Contract. *See*, Answer with Counterclaim, Exhibit "A."

154.    Denied. It is denied that Tripwire South committed any fraud. It is denied that Bizzell is entitled to recission and restitution or attorney fees. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial if relevant.

## COUNT VII
## UNJUST ENRICHMENT

155.    Denied. This paragraph amounts to incorporation to which no further response is necessary.

156.    Denied. It is denied that Tripwire South has been unjustly enriched. At all times relevant hereto, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial if relevant.

157.    Admitted in part. Denied in part. It is admitted that Bizzell made partial payment for the military-grade explosives contemplated by the Contract. It is denied that the payments were fraudulently induced. Strict proof demanded at trial if relevant.

158.   Admitted in part. Denied in part. It is admitted that Tripwire South received partial payments from Bizzell for the military-grade explosives contemplated by the Contract. The remainder of the allegations are denied as a conclusion of law to which no further response is necessary. Strict proof demanded at trial, if relevant.

159.   Admitted in part. Denied in part. It is admitted that Tripwire South has incurred costs in excess of the amounts paid by Bizzell due to Bizzell and Hrobuchak's own actions and inactions and therefore does not have any money to return to Bizzell. *See*, Answer with Counterclaim, Exhibit "E." The remainder of the allegations are denied as a conclusion of law, to which no further response is necessary. Strict proof demanded at trial if relevant.

160.   Denied. Defendants deny that equity requires the return of any money to Bizzell. A s result of Bizzell Hrobuchak's actions and inactions, Tripwire South incurred damages in excess of the amounts paid by Bizzell. *See*, Answer with Counterclaim, Exhibit "E." Strict proof demanded at trial if relevant.

**WHEREFORE**, Defendants Tripwire South LLC, Tripwire Aviation, LLC, Ryan Morris, Ashley Morris, Joshua Mills, and Skybolt LLC respectfully request this Honorable Court enter judgment in its favor, and against Bizzell Corporation, for the claims alleged in the Amended Complaint.

## **AFFIRMATIVE DEFENSES**

### **First Defense**

The Complaint fails to state, in whole or in part, any claim upon which relief may be granted.

### **Second Defense**

Plaintiff's claims are barred, in whole or in part, by Plaintiff's fraud, dishonesty, and/or misrepresentations.

### **Third Defense**

Plaintiff's claims are barred by the doctrine of unclean hands.

### **Fourth Defense**

Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing.

### **Fifth Defense**

Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or repose.

### **Sixth Defense**

Plaintiff's claims are barred by laches.

### **Seventh Defense**

Plaintiff's claims are barred by estoppel.

## **Eighth Defense**

Plaintiff's claims are barred by waiver.

## **Ninth Defense**

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate its alleged damages or losses.

## **Tenth Defense**

Plaintiff's claims are barred by the doctrine of unjust enrichment.

## **Eleventh Defense**

Plaintiff's claims are barred, in whole or in part, by the doctrine of accord and satisfaction.

## **Twelfth Defense**

Plaintiff's claims are barred, in whole or in part, by failure or lack of consideration.

## **Thirteenth Defense**

Plaintiff's claims are barred, in whole or in part, due to one or more mistakes of fact.

## **Fourteenth Defense**

Plaintiff's claims are barred, in whole or in part, by the doctrine of novation.

### Fifteenth Defense

Plaintiff's claims are barred, in whole or in part, by the doctrines of merger, release, settlement, discharge and/or set off.

### Sixteenth Defense

Plaintiff's claims are barred, in whole or in part, by Plaintiff's own acts or omissions.

### Seventeenth Defense

Defendants at all times acted with good faith, on reasonable grounds, and without any intent to harm.

### Eighteenth Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff suffered no damage or because any damage claimed is speculative and/or impossible to ascertain.

### Nineteenth Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of impossibility of performance.

### Twentieth Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of frustration of purpose.

### Twenty-First Defense

Plaintiff's claims are barred, in whole or in part, because Plaintiff made material misrepresentations as to the capabilities and features of its services, upon which Defendants relied, including, but not limited to, Plaintiff's ability to procure all licensing necessary for delivery of the materials governed by the contracts at issue.

### Twenty-Second Defense

Plaintiff's claims for fraud and fraudulent inducement are barred, in whole or in part, by Plaintiff's failure to allege the requisite state of mind on the part of any or all Defendants to whom such claims are directed.

### Twenty-Third Defense

Plaintiff's claims for breach of contract are barred, in whole or in part, by Plaintiff's failure to specifically identify the contracting party against whom such claims are asserted.

### Twenty-Fourth Defense

Plaintiff has failed to aver facts sufficient to support piercing the corporate veil of either Tripwire South LLC or Tripwire Aviation LLC.

**Twenty-Fifth Defense**

Plaintiff has failed to state a claim against any individual defendant in an individual capacity separate and apart from actions on behalf of the corporate defendants.

Defendants reserve the right to supplement this Answer and Affirmative Defenses with additional defenses that may become available or apparent during investigation, discovery, or trial preparation.

## <u>COUNTERCLAIMS</u>

1.     Defendants/Counterclaim Plaintiffs hereby incorporate each of the foregoing paragraphs as though set forth at length herein.

### A.    <u>Tripwire South and Bizzell contract for the sale of military-grade explosives</u>

2.     Starting in April of 2024, Morris, on behalf of Tripwire South, and Michael Hrobuchak ("Hrobuchak"), on behalf of Bizzell Corporation ("Bizzell"), negotiated a contract, through a series of Signal chats, for the purchase of military grade explosives, including Comp-B and Smokeless Powder (the "Contract").

3.     The contract contemplated the sale of 220,000 pounds of Comp-B, with an additional sale of 200,000 pounds of Comp-B to be sold to Bizzell every month for 48-60 months. The contract also contemplated the sale of a) 226,716 pounds of M1 Smokeless Powder; b) 95,920 pounds of M6 Smokeless Powder; c) 25,950 pounds of M26 Smokeless Powder; and d" 140,320 pounds of M30 Smokeless Powder; e) 55,000 pounds of Black Powder "Snake Charges" and "spots;" and f) 20,000 pounds of Back Powder, collectively "Smokeless Powder". *See*, Answer with Counterclaim, Exhibit "A."

4.     At all times relevant hereto, Bizzell agreed to purchase the amounts of military-grade explosives offered by Tripwire South, but continued to attempt to negotiate on the price of the military-grade explosives. *See*, Answer with Counterclaim, Exhibit "A."

5.      Ultimately, Bizzell agreed to purchase the military-grade explosives as offered, with slight reductions in price, and requested Tripwire South invoice Bizzell for the military-grade explosives. *See*, Answer with Counterclaim, Exhibit "A."[3]

**B.      Bizzell fails to pay for all the military-grade explosives contemplated by the contract**

6.      Based on Bizzell's representations in the Signal chats discussed above, Tripwire South invoiced Bizzell for the military-grade explosives as contemplated by the Contract.

7.      On or about April 16, 2024, Tripwire South sent an invoice to Bizzell which indicated Tripwire South received payment for Snake Charges. A true and correct copy of the April 16, 2024 Invoice is attached hereto as Answer with Counterclaim, Exhibit "Q."

8.      The April 16, 2024 invoice also requested payment for 200,000 pounds of Smokeless Powder. *See*, Answer with Counterclaim, Exhibit "Q."

9.      On or about May 15, 2024, Tripwire South invoiced Bizzell for the full 220,000 pounds of Comp-B contemplated by the Contract. A true and correct copy

---

[3] Bizzell ultimately declined a portion of the Contract detailed above, due to some concerns about the M30 Smokeless Powder. This request did not affect the material terms of the Contract. The M30 Smokeless Powder was simply removed from the invoices. *See*, Answer with Counterclaim, Exhibit "B."

of the May 15, 2024 invoice for Comp-B is attached hereto as Answer with Counterclaim, Exhibit "R."

10.    On or about June 7, 2024, Bizzell made a partial payment on the 220,000 pounds of Comp-B, in an amount of $910,954.00. A true and correct copy of the June 7, 2024 Invoice for Comp-B is attached hereto as Answer with Counterclaim, Exhibit "S."

11.    Further, on June 7, 2024, Tripwire South invoiced Bizzell for 488,906 pounds of Smokeless Powder. A true and correct copy of the June 7, 2024 Invoice for Smokeless Powders is attached hereto as Answer with Counterclaim, Exhibit "T."

12.    On or about June 11, 2024, Tripwire South sent an invoice to Bizzell indicating that 95,920 pounds of Smokeless Powder had been paid for. A true and correct copy of the June 11, 2024 invoice regarding the 95,920 pounds Smokeless Powder is attached hereto as Answer with Counterclaim, Exhibit "U."

13.    Further on June 11, 2024, Tripwire South sent an invoice to Bizzell requesting payment for 348,586 pounds of Smokeless Powder. *See*, Answer with Counterclaim, Exhibit "B."

14.    To date, the aforesaid invoice remains outstanding.

15.     On or about June 14, 2024, Tripwire South invoiced Bizzell for the remaining 178,593 pounds of Comp-B, in an amount of $3,929,046.00. *See*, Answer with Counterclaim, Exhibit "B."

16.     To date, the aforesaid invoice remains outstanding.

17.     At all times relevant hereto, Bizzell has failed and/or refused to make any further payments for the outstanding amounts of Comp-B and Smokeless Powder contemplated by the Contract.

18.     Tripwire South has incurred damages as a result of Bizzell's failure to pay for all the military-grade explosives contemplated by the Contract. *See*, Answer with Counterclaim, Exhibit "E."

**C.    Tripwire South contracts with suppliers to procure military-grade explosives for Bizzell**

19.     Based on the representations in the Signal chats discussed herein, Tripwire South entered into several separate agreements to procure the military-grade explosives contemplated by the Contract.

20.     On or about May 21, 2024, Tripwire South entered into a contract with J Squad International, LLC ("J Squad") for the purchase of Smokeless Powder. A true and correct copy of the May 21, 2024 contract is attached hereto as Answer with Counterclaim, Exhibit "V."

21.     Tripwire South also entered into an agreement with Bear River Powder for the purchase of Smokeless Powder. A true and correct copy of the Bear River Powder agreement is attached hereto as Answer with Counterclaim, Exhibit "W."

22.     Further, Tripwire South entered into an agreement with Jacks Powder Keg for the purchase of Smokeless Powder. A true and correct copy of the Jacks Powder Keg agreement is attached hereto as Answer with Counterclaim, Exhibit "X."

23.     On or about May 13, 2024, Tripwire South entered into a separate agreement with J Squad International for the purchase of Comp-B. *See*, Answer with Counterclaim, Exhibit "F."

24.     At all times relevant hereto, Tripwire South would not have entered into all the agreements described herein but for the representations of Bizzell.

**D.**   **Bizzell never timely obtained the proper licensing and permitting to receive military-grade explosives.**

25.     Several months after contracting with Bizzell, Tripwire South discovered Bizzell could not legally receive or export Comp-B and Smokeless Powder.

26.     On September 3, 2024, Tripwire South sent an email to Morris and Sovana Logistics ("Sovana"), the freight company retained by Bizzell to export the military-grade explosives. A true and correct copy of the September 3, 2024 email is attached hereto and incorporated herein as Answer with Counterclaim, Exhibit "Y."

27.    Bizzell was carbon copied on the email as well as two attorneys from Fluet Law, as indicated by the email addresses nrotsko@fluet.law and kdubois@fluet.law.  Attorney Rotsko is one of Bizzell's counsel in this matter. *See*, Answer with Counterclaim, Exhibit "Y."

28.    The September 3, 2024 email states, "We need either the ATF license or the cover letter from a competent authority stating that this purchase and shipment is pursuant to a valid military contract in order for Tripwire to be covered releasing this." *See*, Answer with Counterclaim, Exhibit "Y."

29.    Further, on October 4, 2024, Sovana emailed Tripwire South, with carbon copies to Bizzell and now three attorneys from Fluet Law, as indicated by the email addresses nrotsko@fluetlaw.com, kdubois@fluet.law, and amunitz@fluet.law, inquiring as follows: "Regarding the ATF information please advise exactly what is needed from Bizzell/ATF to move cargo? We are working on coordination to pick up and if the ATF information/approvals are required prior please advise what documents is needed." A true and correct copy of the October 4, 2024 email chain is attached hereto as Answer with Counterclaim, Exhibit "Z."

30.    On the same date, October 4, 2024, Tripwire South emailed Sovana back, with carbon copies to Bizzell and Fluet Law, stating Bizzell "will need a FEL (Federal Explosive License)." *See*, Answer with Counterclaim, Exhibit "Z."

31.    On October 10, 2024, Sovana again emailed Tripwire South, with carbon copies to Bizzell and Fluet Law, stating "we are awaiting the FEL to be obtained." *See*, Answer with Counterclaim, Exhibit "Z."

32.    On the same date, October 10, 2024, Tripwire South emailed Sovana, with carbon copies to Bizzell and Fluet Law, stating, "Jamie, I need to know where the license is? This is now 3 months past what was agreed upon. If they don't have a license then I need the inspectors name they are getting the license inspection from. Also need to verify the commerce piece. This is military grade powder and we have a commerce license in place. That won't work. Is there a DDTC license for all the materials. Time is up. We are incurring tremendous costs to store and provide security for the material they should have had out of here August 1." *See*, Answer with Counterclaim, Exhibit "Z."

33.    On October 14, 2024, Bizzell emailed Tripwire South, with carbon copies to Sovana and Fluet Law, stating, in pertinent part, "Regarding the FEL, the license that will be utilized would have already been transferred to Bizzell but for the recent hurricanes and the resulting outages." *See*, Answer with Counterclaim, Exhibit "Z."

34.    Contrary to Bizzell's prior representations that an ATF license would be produced shortly, Tripwire did not receive any ATF license from Bizzell until

February 3, 2025. *See*, Answer with Counterclaim, Exhibit "Z" (stating, "Please find attached Bizzell's ATF license.").

35.    Bizzell's February 3, 2025 ATF license was provided nearly nine (9) months after the parties contracted for the sale of military grade explosives. *See*, Answer with Counterclaim, Exhibit "C."

36.    More importantly, the ATF license provided on February 3, 2025 was *a license to import*, not sell, explosives. *See*, Answer with Counterclaim, Exhibit "C."

37.    Tripwire South has incurred damages as a result of Bizzell's failure to timely procure the proper ATF license. *See*, Answer with Counterclaim, Exhibit "E."

E.    **Bizzell intervenes in the contract between J Squad and its supplier**

38.    As discussed above, and upon information and belief, J Squad had contracted with suppliers to procure Comp-B.

39.    At all times relevant hereto, J Squad represented to Tripwire South that it could procure Comp-B for Tripwire South. *See*, *e.g.*, Amended Complaint, Exhibit "40B."

40.    Based on J Squad's representations, Tripwire South entered into a contract with J Squad for Comp-B (the "J Squad Contract"). *See*, Answer with Counterclaim, Exhibit "F."

41.     At all times relevant hereto, and for reasons that remain unknown, Bizzell and/or Michael Hrobuchak interfered in the J Squad Contract by contacting the military base where the Comp-B was being stored and/or demilitarized. *See*, *e.g.*, Amended Complaint, Exhibit "40B" (stating, in part, "**your client's violations of its non-disclosure and non-circumvent obligations under the contract by directly communicating with J Squad's supply base**. Due to this unfortunate circumstance, additional discussion and protocols are being implemented to meet our contractual obligations.")(emphasis added); *see*, *also*, Answer with Counterclaim, Exhibit "D" (which establishes the Hrobuchak called Hawthorne military base regarding the Comp-B).

42.     Bizzell and/or Michael Hrobuchak further interfered in the J Squad Contract by contacting Matt Barnett of Bonetti Explosives, which held the license for the Comp-B. A true and correct copy of a portion of the text messages between Matt Barnett and Michael Hrobuchak obtained to date are attached hereto as Answer with Counterclaim, Exhibit "BB" (wherein Michael Hrobuchak asks, "are you the actual contract holder for this project. Just trying to understand the players.").

43.     At all times relevant hereto, the aforesaid interferences were intentional and improper.

44.     Tripwire South has incurred damages as a result of Bizzell and/or Michael Hrobuchak's interference with the J Squad Contract. *See*, Answer with Counterclaim, Exhibit "E."

## F.     Bizzell requests that Tripwire South attempt to procure Comp-B from another supplier

45.     After Bizzell cancelled the order for the Comp-B from the Contract, Bizzell and Tripwire South held a subsequent call.

46.     During said call, Tripwire South indicated it might have the ability to purchase the exact same Comp-B, contemplated in the J Squad Contract, directly from Bonetti Explosives.

47.     At all times relevant hereto, Bizzell represented it agreed with this plan and requested Tripwire South attempt to procure the exact same Comp-B from Bonetti Explosives.

48.     At all times relevant hereto, and based on the representations of Bizzell, Tripwire South contracted with Bonetti Explosives for 220,000 pounds of Comp-B, the exact same Comp-B contemplated by the J Squad Contract. *See*, *e.g.*, Answer with Counterclaim, Exhibit "G."

49.     At all times relevant hereto, Tripwire South sent a down payment to Bonetti Explosives for the 220,000 pounds of Comp-B for the benefit of Bizzell.

50.     At all times relevant hereto, Tripwire South received 50,000 pounds of Comp-B from Bonetti Explosives for the benefit of Bizzell.

51.     After Tripwire South received the 50,000 pounds of Comp-B, Bizzell declined the same, contrary to their prior representations.

52.     At all times relevant hereto, Tripwire remains in possession of the Comp-B it procured for Bizzell, yet Bizzell has failed and refused to accept the Comp-B Tripwire South procured for Bizzell.

53.     At all times relevant hereto, Tripwire South would not have entered into a contract with Bonetti Explosives for Comp-B but for the representations of Bizzell.

54.     Tripwire South has incurred damages as a result of the representations of Bizzell. *See*, Answer with Counterclaim, Exhibit "E."

## COUNTERCLAIM I – BREACH OF CONTRACT
### *Tripwire South, LLC v. Bizzell Corporation*

55.     Defendants/Counterclaim Plaintiffs hereby incorporate each of the foregoing paragraphs as though set forth at length herein.

56.     At all times relevant hereto, Bizzell and Tripwire entered into a contract for the sale of military grade explosives. *See*, *e.g.*, Answer with Counterclaim, Exhibit "A."

57.     At all times relevant hereto, Bizzell breached its contractual duties to Tripwire South, by failing and/or refusing to pay for the full amount of military-grade explosives contemplated in the Contract. *See*, *e.g.*, Answer with Counterclaim, Exhibit "B."

58.    At all times relevant hereto, Bizzell further breached its contractual duties by failing to timely obtain all proper licensing and permitting necessary to receive the military grade explosives procured by Tripwire South. *See*, *e.g.*, Answer with Counterclaim, Exhibit "C."

59.    At all times relevant hereto, Tripwire South has incurred damages as a result of Bizzell's breach of contract. *See*, Answer with Counterclaim, Exhibit "E."

**WHEREFORE**, Tripwire South, LLC respectfully requests this Honorable Court enter judgment in their favor and against Counterclaim Defendant Bizzell Corporation, and award damages in excess of $1,000,000.00, together with interest, and such other relief as this Honorable Court deems equitable and just.

## COUNTERCLAIM II – FRAUDULENT INDUCEMENT
### *Tripwire South, LLC v. Bizzell Corporation*

60.    Defendants/Counterclaim Plaintiffs hereby incorporate each of the foregoing paragraphs as though set forth at length herein.

61.    At all times relevant hereto, Bizzell represented it would purchase military-grade explosives from Tripwire South. *See*, Answer with Counterclaim, Exhibit "A."

62.    At all times relevant hereto Bizzell representations were material to the Contract.

69

63.    In fact, and based on Bizzell's representations Tripwire South entered into multiple agreements to procure military-grade explosives for Bizzell. *See*, Answer with Counterclaim, Exhibits "F," "V," "W," and "X."

64.    Further, at all times relevant hereto, Bizzell represented that it would purchase Comp-B if Tripwire South was able to procure it from Bonetti Explosives.

65.    Tripwire South, based on Bizzell's representations, entered into a contract with Bonetti Explosives for the sale of Comp-B. *See*, Answer with Counterclaim, Exhibit "G."

66.    At all times relevant hereto, the representations of Bizzell detailed above were made falsely, with knowledge of their falsity.

67.    In fact, and at all times relevant hereto, Bizzell has failed and refused to pay for all the military-grade explosives contemplated by the Contract. *See*, Answer with Counterclaim, Exhibit "B."

68.    In the alternative, Bizzell's representations that it would purchase military-grade explosives from Tripwire South were made with recklessness as to whether those representations were true or false.

69.    At all times relevant hereto, Bizzell's representations were made with an intent to mislead Tripwire South into relying on them.

70.    In fact, Tripwire South did rely on Bizzell's representations and entered into multiple agreements to procure military-grade explosives for Bizzell. *See*, Answer with Counterclaim, Exhibits "F," "G," "V," "W," and "X."

71.    At all times relevant hereto, Tripwire South's reliance was justified as Bizzell in the business of procuring military-grade explosives.

72.    As result of Bizzell's fraudulent representations, Tripwire South incurred damages. *See*, Answer with Counterclaim, Exhibit "E."

**WHEREFORE**, Tripwire South, LLC respectfully requests this Honorable Court enter judgment in their favor and against Counterclaim Defendant Bizzell Corporation, and award damages in excess of $1,000,000.00, and punitive damages, together with interest, and such other relief as this Honorable Court deems equitable and just.

## COUNTERCLAIM III – INTENTIONAL INTERFERENCE WITH PERFORMANCE OF CONTRACT BY THIRD PERSON
### *Tripwire South, LLC v. Bizzell Corporation*

73.    Defendants/Counterclaim Plaintiffs hereby incorporate each of the foregoing paragraphs as though set forth at length herein.

74.    At all times relevant hereto, Tripwire South entered into a contract with J Squad to procure Comp-B for Bizzell. *See*, Answer with Counterclaim, Exhibit "F."

75.    At all times relevant hereto, Bizzell, by and through the actions of Hrobuchak, intentionally and improperly interfered with the performance of the J Squad Contract.

76.    Bizzell's intentional and improper interference with the J Squad Contract includes, but is not limited to, Hrobuchak contacting the military base where the Comp-B was being demilitarized. *See*, *e.g.*, Amended Complaint, Exhibit "40B" (stating, in part, "**your client's violations of its non-disclosure and non-circumvent obligations under the contract by directly communicating with J Squad's supply base**. Due to this unfortunate circumstance, additional discussion and protocols are being implemented to meet our contractual obligations."); *see*, *also*, Answer with Counterclaim, Exhibit "D" (which establishes the Hrobuchak called Hawthorne military based regarding the Comp-B).

77.    Significantly, Michael Kichman acknowledged Hrobuchak's call to the Hawthorne affected the demilitarization and/or sale of Comp-B to J Squad. A true and correct copy of a Signal chat from Michael Kichman is attached hereto as Answer with Counterclaim, Exhibit "AA." (stating, "Michael, above Ryan said to have your guy at Lackland call. **That is the issue. Hathorne lost their shit over a Civilian calling**. Supposedly.") (emphasis added).

78.    Bizzell's intentional and improper interference with the J Squad Contract further includes, but is not limited to, Hrobuchak contacting Matt Barnett

72

of Bonetti Explosives, which held the license for the Comp-B, to inquire as to the status of the Comp-B. A true and correct copy of a portion of the text messages between Matt Barnett and Michael Hrobuchak are attached hereto as Answer with Counterclaim, Exhibit "BB" (wherein Michael Hrobuchak asks, "are you the actual contract holder for this project. Just trying to understand the players.)"

79.    As a result of Bizzell's improper and intentional interference with the J Squad Contract, and upon information and belief, caused J Squad to not perform its contractual obligations. *See*, *e.g.*, Amended Complaint, Exhibit "40B."

80.    As a further result of Bizzell's improper and intentional interference in the J Squad contract, Tripwire South incurred damages. *See*, Answer with Counterclaim, Exhibit "E."

81.    At all times relevant hereto, and a result of Bizzell's improper and intentional interference in the J Squad contract, Tripwire South also incurred damages which include, but are not limited to the destruction of the relationship between J Squad and Tripwire South for any future purchase of military-grade explosives; loss of revenue and profits; ongoing storage and handling costs related to the Comp-B in Tripwire South's possession; and replacement costs to locate another provider of Comp-B for Bizzell.

**WHEREFORE**, Tripwire South, LLC respectfully requests this Honorable Court enter judgment in their favor and against Counterclaim Defendants Michael

Hrobuchak and Bizzell Corporation, and award damages in excess of $1,000,000.00, together with interest and such other relief as this Honorable Court deems equitable and just.

## **JURY DEMAND**

Defendants/Counterclaim Plaintiffs demand a jury trial on all issues so triable.


Respectfully submitted,

TIMONEY KNOX, LLP                          McNEES WALLACE & NURICK LLC

By*: /s/ Matthew D. DeLeo*                 By: */s/ Lauren Anthony*
Patrick M. Blair, Esquire                      Kandice K. Hull, Esquire
Attorney ID No. 314670                         Attorney ID No. 86345
Matthew D. DeLeo, Esquire                      Sarah Hyser-Staub, Esquire
Attorney ID No. 331082                         Attorney ID No. 315989
400 Maryland Drive                             Lauren Anthony, Esquire
P.O. Box 7544                                  Attorney ID No. 324557
Fort Washington, PA  19034                     100 Pine Street, P.O. Box 1166
(215) 646-6000                                 Harrisburg, PA  17108-1166
mdeleo@timoneyknox.com                         (717) 232-8000
pblair@timoneyknox.com                         khull@mcneeslaw.com
                                               sstaub@mcneeslaw.com
                                               lanthony@mcneeslaw.com

*Attorneys for Defendants and Counterclaim Plaintiffs*

Dated: 9/17/25

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this date, I served a copy of the foregoing document on all counsel of record by operation of the Court's electronic filing system.

TIMONEY KNOX, LLP

Dated: 9/17/25                    By:    <u>*/s/ Matthew D. DeLeo*</u>
                                                Patrick M. Blair, Esquire
                                                Attorney ID No. 314670
                                                Matthew D. DeLeo, Esquire
                                                Attorney ID No. 331082
                                                400 Maryland Drive
                                                P.O. Box 7544
                                                Fort Washington, PA  19034
                                                (215) 646-6000
                                                mdeleo@timoneyknox.com
                                                pblair@timoneyknox.com

                                                *Attorneys for Defendants and Counterclaim Plaintiffs*