**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BIZZELL CORPORATION,** | : | **CIVIL ACTION NO. 1:25-CV-680** |
| **Plaintiff** | : | **(Judge Neary)** |
| **v.** | : | |
| **TRIPWIRE SOUTH, LLC, *et al.*** | : | |
| **Defendants** | : | |
| **and** | : | |
| **TRIPWIRE SOUTH, LLC,** | : | |
| **Third-Party Plaintiff** | : | |
| **v.** | : | |
| **MICHAEL HROBUCHAK and MICHAEL KICHMAN,** | : | |
| **Third-Party Defendants** | : | |

**MEMORANDUM**

This case involves the rupture of a contractual relationship and the complexities of piecing together the fragments. In the aftermath of a contractual explosion, it can be difficult to determine how to rebuild. Here, plaintiff Bizzell Corporation (hereinafter "Bizzell" sued defendant Tripwire South LLC (hereinafter "Tripwire South") for breach of contract. Tripwire South claims it is not liable to Bizzell or, in the alternative, third party defendant Michael Hrobuchak is indirectly liable to it if Tripwire South were to be found liable to Bizzell and has thus moved to add Hrobuchak to the litigation as a third-party defendant. Tripwire South has not

shown it has a plausible claim against Hrobuchak nor that he is a proper third-party defendant. Therefore, the court will grant Hrobuchak's motion to dismiss. (Doc. 84).

## I. Factual Background & Procedural History[1]

Bizzell is a Wyoming based corporation that specializes in assisting military operations. (Doc. 60 ¶ 3). Bizzell sought to obtain various explosive powders and found a potential vendor in Tripwire South, a purveyor of combustibles headquartered in the infamous artillery center of Gettysburg, Pennsylvania. (Doc. 57 ¶¶ 17, 28).

Michael Hrobuchak, the chief executive officer of Bizzell, contacted Ryan Morris, the president of Tripwire South, in June 2023 regarding the potential sale of various munition powders, including Composition B ("Comp-B"). (Doc. 57 ¶ 17). The parties agreed to the sale of black powder, M6 powder, and Comp-B for $3,902,314. (Doc. 57 ¶¶ 17-18). Bizzell paid in full and then waited for delivery. (Doc. 57 ¶ 18).

Tripwire South then contracted with another company, J-Squad, to purchase the Comp-B to fulfill its contract with Bizzell. (Doc. 60 ¶ 15). J-Squad's supply of Comp-B was housed at Hawthorne Army Depot, where it was to be demilitarized for sale. (Doc. 57 ¶ 21). While Tripwire South's contract with J-Squad was pending, Hrobuchak contacted Matt Barnett of Bonetti Explosives who held the license for the

[1]The court has recited the facts from Tripwire South's perspective because, when ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Comp B, Michael Kichman, a principal of Tripwire International, LLC, and someone at Hawthorne Army Depot. (Doc. 60 ¶ 17). Following that contact, Hawthorne Army Depot withdrew from the contract because, according to Kichman, "Hathorn (sic) lost their shit over a Civilian (sic) calling. Supposedly." (Id. ¶ 37). Without the Comp-B from Hawthorne Army Depot, Tripwire South's contract with J-Squad collapsed and its contract with Bizzell could not be completed. (Doc. 57 ¶ 21).

The fallout from that contract resulted in this lawsuit. Bizzell sued Tripwire South alleging breach of contract relating to the sale of the Comp-B (count III) along with other claims of fraud, fraudulent inducement, breach of contract, rescission, restitution, and unjust enrichment. (Doc. 57). Tripwire South then filed an intentional interference claim against Hrobuchak, among other third-party defendants not relevant here, alleging he interfered with its contract with J-Squad. (Doc. 60). Hrobuchak moves to dismiss the third-party complaint for failure to state a claim or, in the alternative, moves to strike as an improper third-party defendant. (Doc. 84). The motion is now fully briefed (Docs. 91; 92; 93) and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In addition to reviewing the facts contained in

the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 129-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Threadbare legal conclusions disguised as factual allegations are not sufficient for a facially plausible claim. Id. at 679.

## III. Discussion

### A. Motion to Dismiss

Pennsylvania law[2] recognizes two causes of action for tortious interference with contractual relations: (1) interference with an existing contract and (2) interference with a prospective contract. Wurth Baer Supply Co. v. Strouse, 627 F. Supp. 3d 422, 434 (M.D. Pa. 2022). Here, Tripwire South asserts Hrobuchak interfered in its contract with J-Squad, (Doc. 60 at 7-10), and thus proceeds under the existing contract theory. To state a claim for tortious interference with an existing contractual relationship, a plaintiff must show: (1) the existence of a contractual relationship between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intending to harm the contractual relationship; (3) the absence of privilege or justification on behalf of the defendant; and (4) actual legal harm as a result of the defendant's action. CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 384 (3d Cir. 2004) (citing Crivelli v. General Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000).

Here, the parties do not dispute that a contract existed between Tripwire South and J-Squad or that the contract resulted in damages. Additionally, although Bizzell and therefore Hrobuchak stood to benefit from the contract between Tripwire South

---

[2] This case arises under diversity jurisdiction. In such cases, the court applies the substantive law of the surrounding state or commonwealth, here Pennsylvania. See State Coll. Area Sch. Dist. v. Royal Bank of Canada, 825 F. Supp. 2d 573, 584 (M.D. Pa. 2011) (citing Hamilton v. Roth, 624 F.2d 1204, 1210 (3d Cir. 1980)).

and J-Squad, Hrobuchak was not a direct party to the contract and thus can be a defendant in a tortious interference action. Kernaghan v. BCI Commc'ns, Inc., 802 F. Supp. 2d 590, 597 (E.D. Pa. 2011) (finding that Pennsylvania has not adopted the "stranger" rule and thus a party that has an economic interest in the contract but is not a direct party may be a proper defendant in a tortious interference claim). The parties' dispute centers around the second and third elements of a tortious interference claim: whether Hrobuchak intended to harm the contractual relationship and whether he was justified in his actions.

The Pennsylvania Supreme Court has held those elements are intertwined, as both closely relate to the defendant's intent. Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1183 (Pa. 1978) (citing Glenn v. Point Park College, 272 A.2d 895, 899 (1971). A defendant must prove both that the defendant acted intentionally to harm the plaintiff and that those actions were improper. Empire Trucking Co. v. Reading Anthracite Coal Co., 71 A.3d 923, 934 (Pa. Super. 2013). The court should consider whether the defendant's actions were "sanctioned by the 'rules of the game' which society has adopted," considering the particular circumstances. Corr. U.S.A. v. McNany, 892 F. Supp. 2d 626, 642 (M.D. Pa. 2012) (citing Glenn, 272 A. 2d at 899).

In evaluating the "rules of the game," courts should consider: (1) the nature of the actor's conduct; (2) the actor's motive; (3) the interest of the other with which the defendant's conduct interferes, (4) the interests the defendant seeks to advance; (5) the proximity or remoteness of the defendant's conduct to the interference; and (6)

the relationship between the parties. McNany, 892 F. Supp. 2d at 641 (citing Brooks v. Systems Mfg. Corp., No. Civ. A. 03–1523, 2003 WL 23023826, at *5 (E.D. Pa. Dec. 18, 2003)). Courts should provide "substantial deference to defendants whose conduct, despite its conflict with plaintiff's interests, protects an existing, legitimate business concern." Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc., 321 F. Supp. 3d 503, 518 (M.D. Pa. 2018) (quoting Windsor Sec., Inc. v. Hartford Life Ins. Co., 986 F. 2d 655, 665 (3d Cir. 1993)).

Tripwire South alleges Hrobuchak interfered in its contract with J-Squad, a subcontract to Bizzell's contract with Tripwire South, by communicating with people associated with J-Squad and its supplier, Hawthorne Army Depot. (Doc. 60 ¶¶ 16-18).[3] As factual allegations are interpreted in favor of the non-moving party, this court assumes Hrobuchak made all the alleged communications. Even granting that assumption, Tripwire South has not shown Hrobuchak *intentionally* interfered with its contract with J-Squad. There are no factual allegations leading to an inference that Hrobuchak acted with the intention of harming the contract. Communicating with "the players" and investigating the risks are regular and expected parts of a contractual relationship. Tripwire South's claim that Hrobuchak's actions "were

[3] Hrobuchak sent text messages to Barnett asking to "understand the players" associated with the contract. (Doc. 59-28). There are also text messages between Kichman, Morris, and Conan Higgins, Tripwire's in-house attorney, which appear to discuss Hrobuchak communicating with Hawthorne Army Depot. Specifically, Kichman said "Hathorne (sic) lost their shit over a Civilian (sic) calling. Supposedly." (Doc. 59-27). Morris then stated his directions (presumably to Hrobuchak) were for the transaction to be a "[m]ilitary to military transfer. Not Mike calling up and speaking with them." (Id.)

intentional and improper," (Doc. 60 ¶ 18), is no more than a self-serving, conclusory allegation, that cannot support its claim alone.

Furthermore, Tripwire South has not plausibly alleged Hrobuchak failed to "play by the rules of the game" or otherwise acted improperly. While Bizzell and Hrobuchak were not direct parties to the J-Squad contract, that contract was intended to fulfill Tripwire South's contract with Bizzell. As such, Hrobuchak, the CEO of Bizzell, had a legitimate business interest in the transaction. See Audi of Am., Inc., 321 F. Supp. 3d at 518. Considering the substantial deference owed to legitimate business interests, communicating with people associated with the contract is insufficient to show Hrobuchak failed to play by the rules of the game or otherwise acted improperly. The tortious interference claim must be dismissed.

**B. Rule 14 Impleader**

In the alternative, Hrobuchak argues he is an improper third-party defendant. (Doc. 91 at 7-9). Under Rule 14, a defendant may assert a claim against a nonparty "who is or may be liable to it for all or part of the claim against it." FED. R. CIV. P. 14(a)(1). Impleader requires the third party's liability be derivative to the outcome of the main claim. F.D.I.C. v. Bathgate, 27 F.3d 850, 873 (3d Cir. 1994). The defendant, or third-party plaintiff, must show that the third-party defendant would bear all or part of the liability asserted by the original plaintiff. Id.

Tripwire South alleges Hrobuchak would be derivatively liable to it if it was found liable to Bizzell. However, Tripwire South "makes a quantum leap" from the principle of derivative liability to the conclusion that its liability is secondary to

Hrobuchak's. Higgins Erectors & Haulers, Inc. v. E.E. Austin & Son, Inc., 714 F. Supp. 756, 759 (W.D. Pa. 1989). Tripwire South has not alleged any factual or legal basis on which Hrobuchak would be liable to Tripwire South for all or part of Bizzell's claims against it. The mere fact that Tripwire South's claim against Hrobuchak may arise from the same transaction or set of facts as Bizzell's claims against it is insufficient to permit impleader. See United States v. Zarra, No. 10-811, 2011 WL 3667313, at *3 (W.D. Pa. Aug. 22, 2011) (citing United States v. Olavarrieta, 812 F.2d 640, 643 (11th Cir. 1987)).

Additionally, because Rule 14 is procedural, a party must have an "underlying hook to state substantive law" to make use of it. Pansini v. Trane Co., No. CV 17-3948, 2018 WL 2129453, at *3 (E.D. Pa. May 9, 2018) (citing Foulke v. Dugan, 212 F.R.D. 265, 269-70 (E.D. Pa. 2002)). The connection to state substantive law can be shown either through contribution or indemnification. Id. A party can pursue contribution when there is joint liability for an underlying action or indemnification when the third-party plaintiff's liability arises out of its legal relationship and another party's conduct is responsible for the harm. WSSA, LLC v. Safran, No. 1:18-CV-02392, 2019 WL 13221166, at *3-6 (M.D. Pa. July 15, 2019).

Under Pennsylvania law, indemnity is only available (1) when there is an express contract for indemnification or (2) under common law indemnification when the party is secondarily liable for the indemnitor's acts. Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 448 (3d Cir. 2000) (citing Richardson v. John F. Kennedy Mem'l Hosp., 838 F. Supp. 979, 989 (E.D. Pa. 1993)). However, common law

indemnity is only available for tort liability, not breach of contract. EQT Prod. Co. v. Terra Servs., LLC, 179 F. Supp. 3d 486, 493-94 (W.D. Pa. 2016).

There are no factual allegations that Hrobuchak and Tripwire South entered into an express contract for indemnification. Tripwire South appears to be moving under a common law indemnity theory, arguing Hrobuchak is primarily responsible for its breach of contract with Bizzell. (Doc. 92 at 8-9). But that basis in breach of contract makes indemnification unavailable. While tort claims are part of the underlying case between Tripwire South and Bizzell (see Doc. 57), none of those claims relate to Tripwire South's claims against Hrobuchak. Any attempts to veil the claims against Hrobuchak as sounding in tort would be nothing more than "a thinly veiled contrivance which deserves no further attention." Higgins Erectors & Haulers, Inc.,714 F. Supp. at 759 (citing Mattia v. Sears, Roebuck & Co., 531 A.2d 789 (Pa. Super. 1987)).

Because Hrobuchak's potential liability on Tripwire South's tortious interference claim is not derivative of Tripwire South's liability to Bizzell and Tripwire South alleges no basis for indemnification from Hrobuchak, the third-party complaint against Hrobuchak must be dismissed.

## III. Conclusion

The law is sometimes a blunt instrument, but it can be used to shield parties from collateral damage. Here, the necessity of demonstrating a plausible factual basis to state a claim and the procedural requirements of Rule 14 guards Hrobuchak from Tripwire South's claim against him. Either would be grounds to dismiss the claims against Hrobuchak: together, he is doubly protected. While the remaining parties still need to contend with the continuing fallout, the appropriate removal of one party will simplify the residual legal landscape. Hrobuchak's motion (Doc. 84) is granted. An appropriate order shall issue.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated: November 2, 2026